IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| *Avrohom Shor* and the other claimants listed in Appendix A,<br><br>      Petitioners,<br><br>  v.<br><br>Whaleco, Inc. dba Temu,<br><br>      Respondent. | Case No.:<br><br>**DECLARATION OF AVROHOM SHOR** |

I hereby declare under penalty of perjury, pursuant to the laws of the State of New York, that the following is true and correct:

1. I am over 18 years old and if called upon, I would testify competently at trial to the following.
2. The facts asserted here are based on my own personal knowledge.
3. I write this declaration in support of my petition to compel arbitration.
4. On February 29, 2024, along with my attorneys, I attended a conference with Temu's representatives.
5. I have reviewed and approve the letter from Michael Kind, attached as **Exhibit 6**: Temu did not make any settlement offers nor was Temu open to hear any settlement offers from me or my attorneys. Temu's representative merely wanted to ask me pre-written questions (which were answered) and make threats but refused to engage in any discussions about the claims.
6. Although I appeared ready to engage in good faith discussions about the claims and informal dispute resolution, I do not believe that Temu had the same intention.
7. Based on Temu's conduct, I do not believe that further conferences would be helpful.
8. I am troubled that Temu has delayed my claims from proceeding in arbitration.

DECLARATION — 1 —

Zoho Sign Document ID: 2B1D93DF-RTG8ZSUZ6RQEELWEJXSN0HP8N0CQREN16EJIUC46UHO

9. I respectfully ask that the Court grant my petition and allow my claims to proceed in arbitration.

Dated: Mar 12 2025

By: _____

Avrohom Shor

# EXHIBIT 6

# KIND LAW

8860 South Maryland Parkway, Suite 106
Las Vegas, Nevada 89123
P: (702) 337-2322 | T: (844) 399-KIND (5463)
https://kindlaw.com

March 26, 2024

**Sent by email**
Serrin Turner, Esq.
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, New York 10020-1401
Serrin.Turner@lw.com

**RE: Temu Informal Dispute Resolution Conferences**

Dear Serrin,

We write in response to your February 21, 2024, letter in which you detail Whaleco Inc.'s ("Temu") position regarding claimants' participation in the informal dispute resolution conferences ("IDR conferences" or "conferences").

With all due respect, you were not present at the conferences. I was. Your letter contains numerous misrepresentations about what happened during the February 19, 2024, conferences.

It is the claimants' position that Temu did not participate in the IDR conferences in good faith. The purpose of the informal dispute resolution conferences, under the Terms, is to engage in good faith in informal efforts to resolve the disputes. Temu was not prepared to in good faith try to resolve the disputes. Temu was not willing to engage in discussions with any claimant. Instead, Temu incorrectly believed that the IDR conferences was an opportunity to "gather information," read a boilerplate script, and inappropriately try to chill the claimants with threats of sanctions.

**Temu's boilerplate questions do not amount to good faith informal efforts to resolve the disputes**

Throughout several conferences, the same pattern was witnessed. The Temu customer service representative, Michael, would read out boilerplate questions. But no matter what the claimant responded, the Temu representative would move on to the next question and refuse to have any "discussion" at all. At the end of reading his questions, the Temu customer service representative would read claimant a script, threatening that any action against Temu would be countered with sanctions against the consumer.

Any questions raised by the claimants were simply ignored, and the Temu customer service representative would merely move on to the next scripted question. For example, when asked whether the Temu customer service representative had read the claimants' notices of dispute, the question was flatly ignored. Another example was the claimants' questions regarding Temu's use

Zoho Sign Document ID: 2B1D93DF-RTG8ZSUZ6RQEELWEJXSN0HP8N0CQREN16EJIUC46UHO

Temu
March 26, 2024
Page 2 of 3

of tracking pixels, which was similarly again ignored. In fact, the Temu customer service representative refused to answer a single question raised by the claimants during the conferences.

Temu's boilerplate questions were not designed to lead to any discussions. The first question was, to the effect of, "what is the date you signed up for Temu?" As an initial matter, Temu, of course, has this information in its system. No answer by any claimant would change the result of the conference, since this information was already in Temu's possession. Claimants' counsel even asked the representative whether he already had the answer, as one would expect. The Temu customer service representative refused to answer. Nevertheless, the claimants' answer to this question (for example, in the first conference) did not change the result: Temu would move on to the next question and refuse to engage in any discussions about possible resolution.

Temu's second boilerplate question also made no difference. Temu's second question was essentially, "Describe your claim." First, the question was boilerplate, not in good faith and disingenuous, because each claimant had already provided a detailed "notice of dispute" that detailed the claims at issue. In any case, the claimants spent hours (jointly) adding more information regarding the claimants' claims for (1) privacy violations, including Temu's use of tracking tools and surveillance pixels, and (2) false advertising, including Temu's use of false heavily discounted or "free" offers, and Temu's use of deceptive "wheels." After answering Temu's question in detail, the Temu customer service representative would simply say "ok" and move on to the next question. Thus, Temu's second question was merely a sham and not intended in good faith to lead to any meaningful discussions.

Temu's third boilerplate question—"What damages are you seeking?"—was similarly made in pretense. As discussed above, the details of the claimants' claims, including the breakdown of damages, was already included in the notices of dispute. As discussed, when questioned about whether the Temu customer service representative had, or read, the notices of dispute, the Temu customer service representative refused to even provide a response and instead re-read his scripted questions. In any case, the claimants who detailed the exact damages they were seeking, were simply responded to by the Temu customer service representative continuing to read his script. For example, in the fourth conference of the day, the claimant answered that he only sought statutory damages, as detailed in his notice of dispute. The Temu customer service representative, however, did not deviate from his script. The Temu customer service representative ignored the claimant's response and ended the conference without any further discussions.

As outlined above, Temu's intention for the conference was to gather more information from each claimant. The Temu customer service representative confirmed that he intended to use the same script for all the claimants. The Temu customer service representative refused to answer any of claimants' questions or have any discussions. Temu's boilerplate questions did not amount to good faith informal efforts to resolve the disputes. No matter what the claimants responded, the Temu customer service representative would simply continue reading his script and end the conference with a threat to try to chill the agreived consumer.

Zoho Sign Document ID: 2B1D93DF-RTG8ZSUZ6RQEELWEJXSN0HP8N0CQREN16EJIUC46UHO

Temu
March 26, 2024
Page 3 of 3

### The Temu customer service representative had no authority to discuss the claims

The Temu customer service representative was not willing, and had no authority, to receive or make any settlement offers. For example, during the conference for Avrohom Shor, the claimant asked the Temu customer service representative, through counsel, whether the claimant could make a settlement offer. The Temu customer service representative responded, "Let us ask the questions." During the next conferences, time and again, when the claimant asked whether the Temu customer service representative can receive or make any settlement offers, the Temu customer service representative responded in the negative.

When pressed about what the point of the conference was since the Temu customer service representative could not accept or make any offers, the Temu customer service representative responded (mistakenly) that the purpose of the conference was for the Temu customer service representative to ask questions and gather information.

### Mr. Valenti frustrated the purposes of the conferences

Mr. Valenti repeatedly frustrated the purposes of the conferences. For example, throughout the conferences Mr. Valenti encouraged the Temu customer service representative's incorrect position that the purpose of the conferences was for Temu to gather more information from claimants. When reminded that the purpose of the conferences was to engage in meaningful discussions to resolve the claims, Mr. Valenti would ignore counsel and would either instruct the Temu customer service representative to move on to the next question or would end the conference.

As an example, when one of the claimants answered Temu's second boilerplate question ("describe your claim"), at length, detailing the claimant's privacy claims (relating to pixels) and false advertising claims (relating to the deceptive wheel and free offers), Mr. Valenti said, "They're refusing to answer" and directed the Temu customer service representative to "move to the next question."

### Temu's reneged on its commitment to mediate

Notably, Temu's disinterest in engaging in informal discussions is highlighted from Temu's refusal to honor its commitment to mediate the claims before mediator Robert A. Meyer. During a call between counsel on December 28, 2023, counsel for the parties agreed to mediate the claims. However, Temu then refused to honor the commitment, showing its disinterest in engage in good faith informal efforts to resolve the disputes.

In conclusion, the claimants complied in good faith with the informal dispute resolution process as outlined within Temu's Terms and Conditions, but Temu frustrated all of the claimants' efforts. Temu failed to act in good faith under the very Terms that Temu itself drafted. Should Temu have a change of heart regarding its commitment to mediate the parties' disputes, please let me know.

Thank you,

*Michael Kind*
Michael Kind, Esq.