# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

AALANY MCMAHAN, ISAAC DWEK,     )
LUKE SEAGRAVES, AVROHOM SHOR,     )
AND ARIELLA SHOR, AND THE OTHER     )    Case No. 1:25-cv-01590-MKB-RML
CLAIMANTS LISTED IN APPENDIX A,     )
    )    District Judge Margo K. Brodie
    Petitioners,     )
    )    Magistrate Judge Robert M. Levy
    v.     )
    )
WHALECO INC. d/b/a TEMU     )
    )
    Respondent.     )

## RESPONDENT'S MOTION TO DISMISS PETITION TO COMPEL ARBITRATION

Date: June 26, 2025

Serrin Turner
Matthew Valenti
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email: serrin.turner@lw.com
    matthew.valenti@lw.com

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ...................................................................................1

FACTUAL BACKGROUND ......................................................................................2

    A.    The Mass Arbitration Business Model .................................................2

    B.    The IDR Provision in Temu's Arbitration Agreement ...........................4

    C.    Kind Law Notices Thousands of Claims, But Produces Only Five Claimants for IDR Conferences and Then "Cancels" the Remainder ...................5

    D.    The Process Arbitrator Rejects Kind Law's Arguments..........................7

    E.    Kind Law Files the Instant Petition, Raising the Same Arguments Rejected by the Process Arbitrator .................................................10

I.    Petitioners Are Estopped From Relitigating The AAA's Ruling ......................11

    A.    Collateral Estoppel Bars Petitioners from Seeking to Compel Arbitration of Issues Relating to Their Compliance with the IDR Process............................11

    B.    The Process Arbitrator's Order Precludes the Court from Ruling That the Instant Dispute Should Be Decided by Merits Arbitrators ....................................13

II.    The AAA's Jurisdictional Ruling Was Correct in Any Event ...........................14

    A.    This Dispute Is Fundamentally About Non-Compliance with a Condition Precedent, Which the Delegation Clause Carves Out for a Court to Decide.........15

    B.    The Carveout to the Delegation Provision Is Enforceable....................17

III.    The IDR Provision Is Enforceable .................................................19

    A.    The IDR Provision Is Enforceable ...................................................19

    C.    Petitioners Have Failed to Comply with the IDR Provision.................25

CONCLUSION.................................................................................25

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Allstate Ins. Co. v. Elzanaty,*
929 F. Supp. 2d 199 (E.D.N.Y. 2013) ...................................................................18

*Am. Chung Nam, LLC v. Mitsui O.S.K. Lines, Ltd.*,
2023 WL 8845213 (C.D. Cal. 2023).....................................................................20

*Ambassador Constr. Co. v. 40 Wall St. Dev. Assoc., LLC*,
264 A.D.2d 317 (1st Dep't 1999) ....................................................................11, 16

*Anyachebelu v. Brooklyn Hosp. Ctr.*
2017 WL 9511073 (E.D.N.Y. July 20, 2017) .........................................................6

*Benjamin v. Traffic Exec. Ass'n E. Railroads*,
869 F.2d 107 (2d Cir. 1989)..................................................................................11

*Bielski v. Coinbase, Inc.*,
87 F.4th 1003 (9th Cir. 2023) ..........................................................................20, 22

*BOCA Aviation Ltd. v. AirBridgeCargo Airlines, LLC*,
669 F. Supp. 3d 204 (S.D.N.Y. 2023)....................................................................24

*Catalano v. Applied Biometrics Prods., Inc.*,
2003 WL 22004902 (S.D.N.Y. 2003) ....................................................................12

*Davenport v. Nvidia Corp.*,
719 F. Supp. 3d 1019 (N.D. Cal. 2024) .................................................................21

*DePrima v. City of New York Dep't of Educ.*,
2014 WL 1155282 (E.D.N.Y. 2014) (Brodie, J.) .................................................12

*Dundon v. Komansky*,
15 F. App'x 27 (2d Cir. 2001) ...............................................................................12

*Faith v. Khosrowshahi*,
2023 WL 5278126 (E.D.N.Y. 2023)......................................................................18

*Fuchsberg & Fuchsberg v. Galizia*,
300 F.3d 105 (2d Cir. 2002)..................................................................................11

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
561 U.S. 287 (2010)...............................................................................................10

*Griffin v. Sirva, Inc.*,
   291 F. Supp. 3d 245 (E.D.N.Y. 2018) (Brodie, J.) ................................................11

*Harmony Rockaway, LLC v. Gelwan*,
   200 A.D.3d 863 (2d Dep't 2021) ........................................................................17

*Harriott v. Nationstar Mortg. LLC*,
   2018 WL 4853045 (E.D.N.Y. 2018) (Brodie, J.) ................................................11

*Hu v. Whaleco, Inc.*,
   No. 1:23-cv-06962-MKB-RML (E.D.N.Y.) .........................................................9

*In re BAM Trading Servs. Inc. Sec. Litig.*,
   733 F. Supp. 3d 854 (N.D. Cal. 2024) .................................................................21

*In re Bartin Deniz Nakliyati*,
   1989 WL 128581 (E.D.N.Y. 1989) ......................................................................23

*Jofen v. Epoch Biosciences, Inc.*,
   2002 WL 1461351 (S.D.N.Y. 2002), *aff'd*, 62 F. App'x 410 (2d Cir. 2003) .........24

*Jones v. Starz Entertainment, LLC*,
   129 F.4th 1176 (9th Cir. 2025) ...........................................................................14

*KPMG LLP v. Cocchi*,
   565 U.S. 18 (2011) ..............................................................................................18

*Lloyd v. J.P. Morgan Chase & Co.*,
   791 F.3d 265 (2d Cir. 2015) ................................................................................10

*MacClelland v. Cellco P'ship*,
   609 F. Supp. 3d 1024 (N.D. Cal. 2022) ..............................................................21

*Matter of Brenda DeLuca Tr.*,
   108 A.D.3d 902 (3d Dep't 2013) .........................................................................15

*McCoy v. Dave & Buster's, Inc.*,
   2018 WL 550637 (E.D.N.Y. Jan. 24, 2018) ........................................................17

*McKinney v. Bonilla*,
   2010 WL 2817179 (S.D. Cal.2010) .....................................................................21

*Meadows v. Cebridge Acquisition, LLC*,
   132 F.4th 716 (4th Cir. 2025) .............................................................................20

*Nayal v. HIP Network Servs. IPA, Inc.*,
   620 F. Supp. 2d 566 (S.D.N.Y. 2009) .................................................................19

*Ng v. HSBC Mortg. Corp.*,
    2011 WL 3511296 (E.D.N.Y. 2011)............................................................................16

*Niagara Frontier Transp. Auth. v. Computer Scis. Corp.*,
    179 A.D.2d 1037,1038 (4th Dep't 1992) ...........................................................16, 18

*Nyulassy v. Lockheed Martin Corp.*,
    120 Cal. App. 4th 1267 (2004) .........................................................................21

*Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*,
    86 N.Y.2d 685 (1995) ...................................................................................25

*PaineWebber Inc. v. Bybyk*,
    81 F.3d 1193 (2d Cir. 1996) ............................................................................14

*Pandolfi v. AviaGames, Inc.*,
    2024 WL 4051754 (N.D. Cal. 2024) ..................................................................14

*Pearl v. Coinbase Glob., Inc.*,
    2023 WL 1769190 (N.D. Cal. 2023) ..............................................................17, 18

*Pokorny v. Quixtar, Inc.*,
    601 F.3d 987 (9th Cir. 2010) ...........................................................................21

*Puckett v. United States*,
    556 U.S. 129 (2009)......................................................................................23

*Ragone v. Atl. Video at Manhattan Ctr.*,
    595 F.3d 115 (2d Cir. 2010)............................................................................18

*SCPS, LLC et al. v. Kind Law et al.*,
    Index No. 152508/2025 (N.Y. Sup. Ct.) ...............................................................4

*Shelby v. Brookdale Senior Living Inc.*,
    2021 WL 718183 (D. Ariz. 2021), *aff'd*, 2022 WL 1657245 (9th Cir. 2022) ........................21

*Siemens Energy, Inc. v. Petroleos de Venezuela, S.A.*,
    82 F.4th 144 (2d Cir. 2023) ............................................................................24

*Soliman v. Daimler AG*,
    2011 WL 765885 (E.D.N.Y. 2011), *report and recommendation adopted*,
    2011 WL 765931 (E.D.N.Y. 2011)....................................................................12

*Stern v. Gepo Realty Corp.*,
    289 N.Y. 274 (1942) ....................................................................................24

*Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*,
    559 U.S. 662 (2010).................................................................................10, 25

*Stone & Webster, Inc. v. Ga. Power Co.*,
  968 F. Supp. 2d 1 (D.D.C. 2013) ..........................................................................15

*Tercero v. Sacramento Logistics LLC*,
  2025 WL 43125 (E.D. Cal. 2025) .........................................................................21

*United States v. Hernandez*,
  404 F. App'x 521 (2d Cir. 2010) ..........................................................................25

*Utica Mut. Ins. Co. v. Clearwater Ins. Co.*,
  906 F.3d 12 (2d Cir. 2018).............................................................................10, 24

*Valdez v. Genesis Healthcare LLC*,
  2019 WL 6604868 (C.D. Cal. July 15, 2019)......................................................22

*Wells Fargo Bank, N.A. v. Bivona & Cohen, P.C.*,
  2015 WL 5752595 (S.D.N.Y. 2015)......................................................................16

*White v. Four Seasons Hotels & Resorts*,
  999 F. Supp. 2d 250 (D.D.C. 2013) .....................................................................21

*Young v. Hunter*,
  6 N.Y. 203 (1852) ................................................................................................24

*Yulio v. Moore McCormack Lines, Inc.*,
  387 F. Supp. 872 (S.D.N.Y.1975) ........................................................................13

*Ziboukh et al. v. Whaleco et al.*,
  Case No. 24-cv-03733 (E.D.N.Y. 2025), ECF No. 82-1 ......................................20

## OTHER AUTHORITIES

AAA, *Consumer Mass Arbitration* ("The Mass Arbitration Supplementary Rules
  are designed to enhance efficiency, save time, and reduce costs in high-
  volume cases."), https://www.adr.org/industries/consumer-mass-arbitration ........................13

*Mass Arbitration Shakedown: Coercing Unjustified Settlements*, U.S. Chamber of
  Commerce Institute for Legal Reform (Feb. 2023),
  https://instituteforlegalreform.com/wp-content/uploads/2023/02/Mass-
  Arbitration-Shakedown-digital.pdf ........................................................................2, 3

## PRELIMINARY STATEMENT

This dispute is the latest chapter in Petitioners' efforts to initiate arbitrations against Temu without complying with the informal dispute resolution ("IDR") provision in the parties' arbitration agreement. That provision simply requires that, before a party may initiate arbitration with the American Arbitration Association ("AAA"), they must meet telephonically with the other side to see if they can reach an informal resolution. Here, Petitioners filed thousands of arbitration demands without completing the IDR process, leading the AAA to find that it lacked jurisdiction, and that any disputes about Petitioners' non-compliance—including their arguments that they are excused from complying with the IDR provision because it is unenforceable—must be resolved in court pursuant to a carveout in the agreement's delegation provision. Petitioners now seek for this Court to second-guess the AAA's order, or, alternatively, to deem the IDR requirement unenforceable. The Court should decline to do either.

*First*, Petitioners are collaterally estopped from asking the Court to reverse the AAA's determination of its own jurisdiction and send the parties *back to arbitration* to relitigate the same issues a second time. The arguments Petitioners raise here were thoroughly briefed before the AAA, which rejected all of them. That order is binding under the AAA's rules and has preclusive effect under Second Circuit authority. Nor is there any merit to Petitioners' argument that the Process Arbitrator who issued the AAA's order overstepped her authority in ruling on the parties' dispute over the IDR precondition. The AAA's rules expressly authorize a Process Arbitrator to resolve "disputes over any applicable conditions precedent," and the AAA has the authority to interpret its own rules and determine its own jurisdiction.

*Second*, even if Petitioners were entitled to relitigate the AAA's order, the result would not change. The AAA applied the plain language of the parties' agreement, the AAA's own rules, and applicable case law—all of which require Petitioners to complete individual IDR conferences

1

before commencing arbitration. A carveout to the delegation clause in the arbitration agreement requires any dispute about compliance with the provision to be litigated in court—which encompasses the unenforceability arguments Petitioners wish to raise as a defense in that dispute.

*Third*, the Court should reject Petitioners' various arguments that the IDR process is unenforceable, or that Petitioners otherwise need not individually comply with the requirement. The IDR process is virtually burdenless on any individual claimant, as it merely requires a short phone call with a Temu representative. Moreover, it applies mutually, does not require any "evidence" to be exchanged by the parties, and, if it is not successful, a claimant may immediately commence arbitration. This process is considerably less burdensome than similar provisions that courts around the country have upheld, and there is no reason for any different result here.

Accordingly, the Court should deny the Petition, find the IDR process enforceable, and hold that Petitioners have failed to comply.

## FACTUAL BACKGROUND[1]

### A.    The Mass Arbitration Business Model

Before delving into the specific facts of this matter, we first provide general context on "mass arbitration"—as this lawsuit is part of a mass arbitration effort engineered by Petitioners' counsel, Kind Law LLP ("Kind Law"). As has been documented, "mass arbitration attacks … have skyrocketed in recent years," targeting companies with arbitration agreements in their terms of use.[2] This strategy seeks to weaponize the fees charged to businesses by arbitration providers, like

---

[1] All citations to "Petition" or "Pet." refer hereinafter to the Memorandum of Points and Authorities in Support of the Petition for an Order Compelling Arbitration Before the AAA, ECF No. 1-3. Unless otherwise noted as an Exhibit attached to the Declaration of Serrin Turner ("Turner Decl."), all citations to "Ex." refer to the exhibits annexed to the Petition, filed in one composite document, ECF No. 1-5.

[2] *Mass Arbitration Shakedown: Coercing Unjustified Settlements*, U.S. Chamber of Commerce Institute for Legal Reform (Feb. 2023) at 2-3, https://instituteforlegalreform.com/wp-content/uploads/2023/02/Mass-Arbitration-Shakedown-digital.pdf.

the AAA, by filing thousands of identical arbitration demands, and then leveraging the fees charged to the business to pressure it to settle, regardless of the merits of the claims.[3]

In response to these trends, the AAA has promulgated rules—the "Mass Arbitration Supplementary Rules"—that create a mechanism for a single arbitrator (a "Process Arbitrator") to resolve preliminary, procedural disputes prior to litigating the merits of any individual demand. Ex. 9.3 at MA-6. Critical here, the appointment of a Process Arbitrator only requires a one-time fee, whereas the AAA's per-case fees are not assessed until demands proceed to individual "Merits Arbitrators" for resolution of the merits.[4] Accordingly, a mass arbitration strategy—like the one Kind Law is pursuing—hinges on the hundreds or thousands of individual demands filed by the claimants' firm proceeding to Merits Arbitrators.

Firms pursuing mass arbitration have little incentive to investigate, let alone separately litigate, claims on behalf of thousands of individual clients.[5] Instead, their incentive is to recruit as many "clients" as possible, so they can file as many arbitration demands as possible. As a result, it is not uncommon in mass arbitrations for demands to be filed "in the name of nonexistent individuals, former customers without grievances, and others obviously not eligible for relief." [6]

---

[3] *Id.* at 3 ("[T]he apparent goal … is to saddle the company with an immediate obligation to pay tens of millions of dollars in fees to the arbitration provider if the company wants to have any opportunity at all to defend itself," hoping the business will "pay a hefty settlement to resolve the claims *en masse*—regardless of how weak the underlying claims might be.").

[4] *See* AAA, *Consumer Mass Arbitration and Mediation Fee Schedule* (Jan. 15, 2024), https://www.adr.org/media/jixnnl1x/consumer_mass_arbitration_and_mediation_fee_schedule.pdf.

[5] *See Mass Arbitration Shakedown*, *supra* n.2 at 3 ("[T]he lawyers' purpose is not to obtain an arbitrator's decision on the merits for each of the underlying claims. The lawyers generally appear to lack the resources to handle tens of thousands of arbitration proceedings simultaneously.").

[6] *See Mass Arbitration Shakedown*, *supra* n.2 at 35-38 (summarizing examples where mass arbitrations were filed against businesses on behalf of claimants that either did not exist or could not be verified as having an actual dispute with the business, and stating that "it is quite possible that arbitration demands are being filed merely because someone submitted an online form asserting that he or she is among the group of people that the firm is seeking to represent, without any real investigation at all").

Indeed, Kind Law is presently being sued over allegations of such abusive tactics. *See* Turner Decl. Ex. A (Complaint in *SCPS, LLC et al. v. Kind Law et al.*, Index No. 152508/2025 (N.Y. Sup. Ct.)). According to the complaint in that lawsuit: In August 2024, Kind Law filed nearly 1,000 "substantively identical individual demands for arbitration with the AAA" against two businesses. *Id.* ¶ 26. After the businesses investigated the demands, many of Kind Law's purported clients allegedly disclaimed any knowledge of the arbitration demands filed on their behalf— stating, for example, "I am NOT represented by any law firms such as Kind Law," "I have no lawyer or lawsuits against anyone," "is this scam[?]," and "I gave no permission nor consent to anything having to do with either company listed in this complaint." *Id.* ¶¶ 33-36, 40.

## B.    The IDR Provision in Temu's Arbitration Agreement

Petitioners here claim to be Temu customers who agreed to the arbitration agreement in Temu's Terms of Use (Ex. 1, the "Terms"). Pet. at 3. The agreement contains an IDR provision requiring a party seeking to initiate arbitration to first "personally meet and confer telephonically or via videoconference" with the other party, "in a good faith effort to resolve [the dispute] informally." Terms § 19.2. The provision states that while "counsel may participate in the conference," both parties "also agree to participate in the conference." *Id.* All relevant deadlines are tolled while the parties engage in the IDR process. *Id.* The Terms are clear: "Engaging in the Informal Dispute Resolution Conference is a condition precedent and requirement that must be fulfilled *before* commencing arbitration." *Id.* Similarly, the Terms require that "[t]he Party initiating arbitration must include as part of the demand a personally signed certification of compliance with the informal dispute resolution process." *Id.* § 19.5.

The IDR process itself is simple and straightforward. It merely requires both parties to join a short call, where they can each hear other's views to see if the dispute can be resolved

4

informally.[7] Beyond providing an opportunity for informal resolution, the IDR provision's requirement for personal participation by the claimant also serves to ensure that there is an actual dispute—with an actual *disputant*—that needs to be arbitrated. That is particularly important in the mass arbitration context, given the incentive that plaintiffs' firms have to collect as many "clients" as possible, even though the individuals may not have any real grievance against the company or understand what they have signed up for.

Because it would defeat the purpose of having a condition *precedent to arbitration* if parties were able to proceed to arbitration without complying with it, the Terms carve out disputes over compliance with the IDR requirement from the delegation clause. Terms § 19.7. Specifically, the Terms provide that "all Disputes about whether either party has satisfied any condition precedent to arbitration shall be decided only by a court of competent jurisdiction and not by an arbitrator." *Id.* Thus, if one party files an arbitration demand without first complying with the IDR requirement, the other party may dispute their right to proceed with arbitration—and that dispute must be resolved in court, not arbitration. *Id.*

### C.    Kind Law Notices Thousands of Claims, But Produces Only Five Claimants for IDR Conferences and Then "Cancels" the Remainder

On or around January 22, 2024, Kind Law sent Temu notices of dispute on behalf of 9,937 putative claimants. Pet. at 4. After receiving the notices, Temu informed Kind Law of the IDR provision in the Terms, and asked Kind Law to provide a date and time "for each individual client who wishes to participate in an IDR Conference." *See* Turner Decl. Ex. B (Feb. 4, 2024 Email).[8]

---

[7] While the Terms do not require Temu to extend settlement offers during the IDR process, Temu's representatives are authorized to do so. *See* Ex. 5, at 3 ("Temu was prepared to make settlement offers at these conferences depending on the good faith participation of each claimant and how the dialogue unfolded, but Kind Law never let the discussions get far enough for Temu to even explore this possibility.").

[8] In evaluating this motion, the Court may consider "the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint," as well as

Kind Law stated that it did not agree "that such conferences are required or enforceable," but nonetheless stated that "we agree to proceed with these conferences since you requested them and we would like to act in good faith to discuss early resolution." *Id.* Kind Law sent a spreadsheet with dates and times for individual IDR conferences for 9,600 claimants. *Id.* At the same time, however, it previewed what would be its actual strategy, stating: "After Day 1 … , if Claimants believe that Temu is not acting in good faith, Claimants reserve the right to object to continue to participate in further conferences … and proceed with their claims." *Id.*

That is exactly what transpired. On "Day One" of its proposed "schedule," Kind Law produced a mere five individuals for IDR conferences—and then abruptly "cancelled" the remaining 9,595 conferences, asserting, in a subsequent letter, that "[i]t is the claimants' position that Temu did not participate in the IDR conferences in good faith." Ex. 6. As the basis for this assertion, Kind Law asserted that Temu "incorrectly believed that the IDR conferences was [sic] an opportunity to 'gather information,' read a boilerplate script, and inappropriately try to chill the claimants with threats of sanctions." *Id.* Temu had a much different view of what occurred. As Temu explained in a letter to Kind Law, "Temu was fully prepared to engage in a good faith dialogue with each claimant to obtain more information about their concerns and attempt to resolve them, but was precluded from doing so by Kind Law." Ex. 5 at 1. Temu noted that none of the five Petitioners who attended the conferences actually spoke at any point, beyond stating their name; instead, the conferences were commandeered by Mr. Kind—who interjected at every turn, even in

_____

documents that are "integral to the complaint," records not used to establish the "truth of the matter asserted therein," and "filings in an arbitration proceeding," without converting it into a motion for summary judgment. *Anyachebelu v. Brooklyn Hosp. Ctr.*, 2017 WL 9511073 at *5-6 (E.D.N.Y. July 20, 2017).

response to basic questions about what concerns the claimants had. *Id.* at 2.[9]

###### D.    The Process Arbitrator Rejects Kind Law's Arguments

Based on Kind Law's abrupt cancellation, none of the thousands of claimants Kind Law purported to represent showed up for their IDR conferences, beyond the first five. on March 27, 2024, Kind Law filed 15,648 arbitration demands with the AAA. *See* Ex. 8. Kind Law subsequently filed additional demands in June 2024 and August 2024, for a total of 20,489 demands overall. *See* Ex. 12 (referencing more than 20,000 claimants). Kind Law filed these demands without including certifications from each claimant that they had completed the IDR process, as required under the Terms. *See* Terms 19.5.

On April 12, 2024, after the first set of demands was filed, Temu promptly informed the AAA that Petitioners did not comply with the IDR process, and that disputes over compliance with the IDR provision were reserved for the court. *See* Ex. 8. In response, despite previously asserting that the reason it cancelled the IDR conferences was that "Temu did not participate in the IDR conferences in good faith," (Ex. 6), Kind Law now asserted that Petitioners were challenging the enforceability of the IDR provision, and that this dispute was delegated under the Terms to an arbitrator. Notably, Kind Law went out of its way to argue that, under the AAA's rules, the dispute had to be heard by a "merits arbitrator," not a "process arbitrator." Ex. 14 at 3-4. As noted above, sending disputes to Merits Arbitrators is what triggers the AAA's fees for individual arbitrations—as compared to the small, one-time fee charged for a Process Arbitrator. *Supra* at 3.

---

[9] Petitioners have claimed that, after Temu's customer service representative asked the claimant about their concerns with Temu, "one of the claimants answered Temu's [] boilerplate question … at length." Pet. at 2. However, when Kind Law says "the claimant" answered the question, what they appear to mean is *a lawyer from Kind Law*, as no claimant said anything during the conferences beyond their name. *See* Ex. 5.

On a call with an AAA administrator on June 3, 2024, the AAA informed the parties that it would appoint a Process Arbitrator to review the issues raised by the parties. The parties jointly selected Dana Welch, Esq. to serve as the Process Arbitrator.[10] On July 23, 2024, the parties submitted a "Joint Statement of Issues" asking Arbitrator Welch to resolve "whether [the AAA] has jurisdiction to resolve th[e] dispute" between the parties in relation to the IDR requirement "or whether Temu's Terms of Use require that dispute be resolved in court before proceeding in arbitration." *See* Turner Decl. Ex. C (Joint Statement of Issues). Following an initial conference, Arbitrator Welch requested briefing as follows:

> The following issues are before the Process Arbitrator: … Whether the issue of enforceability of § 19.2 of Temu's Terms of Use is a defense to the question of whether the Individual Claimants have satisfied the Informal Dispute Resolution ("IDR") precondition to arbitration. In that event, pursuant to § 19.7 of Temu's Terms of Use, a court must decide whether the precondition has been met. Alternatively, whether the issue of enforceability of § 19.2 of Temu's Terms of Use must be decided prior to any determination of whether the IDR precondition has been met, in which case, merits arbitrators must decide the issue of enforceability.

*See* Turner Decl. Ex. D (July 26, 2024 Scheduling Order).

Arbitrator Welch reviewed multiple rounds of briefing on these issues. Temu stated that it was disputing that Petitioners complied with the IDR provision, and that such disputes were reserved for a court under the Terms—even if Petitioners were raising enforceability of the provision as a defense to their non-compliance, which, Temu explained, a court could decide in adjudicating the overall dispute. *See* Ex. 12. Kind Law argued that "[t]he Process Arbitrator should allow these cases to proceed to the merits arbitrator, and not to court" because Petitioners were arguing that (i) the IDR requirement was unenforceable, (ii) the carveout in the delegation

---

[10] Ms. Welch has extensive experience as an arbitrator, handling "over 400 disputes for the last twenty-three years," and is "a Fellow of the College of Commercial Arbitrators, where she is the President, serving on the Executive Committee," among other credentials. *See* Welch ADR, https://www.welchadr.com/.

provision for disputes over compliance with the requirement was unenforceable, and (iii) Temu "waived" its right to enforce the IDR provision—all of which, they contended, were issues delegated to the arbitrator under the Terms. Ex. 11 at 4. In the course of making these arguments, Kind Law argued that Temu's position that the parties' dispute belonged in court was inconsistent with its position in *Hu v. Whaleco, Inc.*, No. 1:23-cv-06962-MKB-RML (E.D.N.Y.), where Temu sought to compel arbitration of the plaintiffs' enforceability challenges. *Id.* at 5-6.

Arbitrator Welch agreed with Temu on all counts and, on September 19, 2024, issued an order closing the case for lack of jurisdiction. Ex. 15. First, Arbitrator Welch found that the IDR provision was a "jurisdictional requirement," and that disputes over compliance were reserved for a court given that "Temu's arbitration agreement is not silent on the issue of who decides the threshold issue of whether the condition precedent of IDR conferences has been met." *Id.* at V.A. As for Petitioners' challenge to the enforceability of the IDR provision, Arbitrator Welch ruled that "a court, which does have jurisdiction over the issue of whether the condition precedent has been met, may consider Claimants' argument" that the IDR provision is unconscionable, because "[u]nconscionability of a contractual provision is a defense to a claim of non-compliance with that provision." *Id.* at V.B. Second, Arbitrator Welch determined that Temu had not waived its right to require Petitioners to comply with the IDR process, as the very dispute before her "demonstrate[d] [Temu's] intention to assert that right." *Id.* at V.A. Finally, Arbitrator Welch stated that Temu's positions in this case and *Hu* are not inconsistent, as the cases are distinguishable: In *Hu*, "plaintiffs are resisting arbitration on Temu's motion to compel," while here, Petitioners "want to proceed with arbitration, but argue that they should not have to comply with the precondition of the IDR conferences," thus implicating the carveout to the delegation clause for disputes over compliance with the IDR provision, which was not at issue in *Hu*. *Id.* at V.C.

9

E.    **Kind Law Files the Instant Petition, Raising the Same Arguments Rejected by the Process Arbitrator**

Under the AAA's rules, "[r]ulings by the Process Arbitrator" are "final and binding upon the parties." *See* Ex. 9.3 at MA-6(j). Nonetheless, approximately six months after Arbitrator Welch's decision, Kind Law filed the instant Petition on behalf of 6,528 of the over 20,000 claimants they purport to represent, which largely seeks to relitigate the same jurisdictional arguments Arbitrator Welch rejected. ECF No. 1.[11] Thus, the Petition is mostly devoted to arguing that the Court has no jurisdiction over this dispute and that Petitioners are entitled to proceed directly to Merits Arbitrators. The one issue that Arbitrator Welch found *was* for the Court to decide—whether Petitioners complied with the IDR requirement or have a valid excuse for failing to do so—receives short shrift in the Petition, with the Petitioners' arguments on the issue tacked on in a few pages at the end.

## LEGAL STANDARDS

Under the Federal Arbitration Act, "agreements to arbitrate are enforced according to their terms." *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, 559 U.S. 662, 682 (2010). A party is not "required to submit to arbitration any dispute which [it] has not agreed so to submit." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 314 (2010). "[I]f an arbitration clause is best construed to express the parties' intent not to arbitrate certain disputes, that intent controls and cannot be overridden by the presumption of arbitrability." *Lloyd v. J.P. Morgan Chase & Co*., 791 F.3d 265, 270 (2d Cir. 2015).

"A condition precedent is 'an act or event'" that "must occur before a duty to perform a promise in the agreement arises." *Utica Mut. Ins. Co. v. Clearwater Ins. Co*., 906 F.3d 12, 22 (2d

---

[11] While Kind Law sent notices of dispute on behalf 23,167 purported clients between January 2024 and October 2024 and filed demands on behalf of 20,489 of them, *see supra*, Kind Law provides no explanation for why the Petition is not being filed on behalf of only some of them.

Cir. 2018). Courts routinely bar parties from arbitrating if they fail to comply with a condition precedent. *See, e.g.*, *Ambassador Constr. Co. v. 40 Wall St. Dev. Assoc., LLC*, 264 A.D.2d 317, 318 (1st Dep't 1999) ("[D]efendants' right to arbitrate is barred by the failure to comply with a clearly applicable contractual condition precedent.").

## ARGUMENT

## I.    PETITIONERS ARE ESTOPPED FROM RELITIGATING THE AAA'S RULING

Petitioners ask the Court to compel the parties to arbitrate the very issues they already raised before Arbitrator Welch, who, in a final and binding decision, determined the AAA lacked jurisdiction. Petitioners are barred from relitigating those issues here.

### A.    Collateral Estoppel Bars Petitioners from Seeking to Compel Arbitration of Issues Relating to Their Compliance with the IDR Process

The bulk of the Petition is simply a collateral attack on the AAA's order, in the hope that the Court will "overrule" Arbitrator Welch and send the parties to Merits Arbitrators, as Arbitrator Welch refused to do. *See* Pet. § IV.A.1. Unsurprisingly, New York law does not allow this.

"Under New York law, collateral estoppel prevents a party from relitigating an issue decided against that party in a prior adjudication." *Fuchsberg & Fuchsberg v. Galizia*, 300 F.3d 105, 109 (2d Cir. 2002); *Griffin v. Sirva, Inc.*, 291 F. Supp. 3d 245, 251-52 (E.D.N.Y. 2018) (Brodie, J.) ("Under either federal law or New York State law, collateral estoppel, or issue preclusion, bars the relitigation of an issue that was raised, litigated, and actually decided by a judgment in a prior proceeding … ." ). "[C]ollateral estoppel bars claims where (1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *Harriott v. Nationstar Mortg. LLC*, 2018 WL 4853045, at *8 (E.D.N.Y. 2018) (Brodie, J.). It is well settled that an arbitration order "can serve as the basis for collateral estoppel." *Benjamin v.*

11

*Traffic Exec. Ass'n E. Railroads*, 869 F.2d 107, 110 (2d Cir. 1989); *see also Dundon v. Komansky*, 15 F. App'x 27, 29 (2d Cir. 2001) (applying estoppel to arbitration order).

Collateral estoppel fully applies here. The issues Petitioners raise here are identical to the ones fully and fairly litigated before the AAA, as shown below:

| Petitioners' Briefing in the AAA | Petition in Court |
|---|---|
| "The Process Arbitrator should allow these cases to proceed to the merits arbitrator, and not to court, because [there is a dispute about] enforceab[ility]." Ex. 11 at 4. | "[O]nly the Merits Arbitrator, and not the court, has authority to decide issues of enforceability." Pet. at 10. |
| "[W]aiver is … an arbitrability issue for the arbitrator to decide." Ex. 11 at 7. | "[W]hether Temu waived its right to enforce the conference pre-condition—should be decided by the arbitrator." Pet. at 12. |
| "[T]he question of whether section 19.7's 'carve out' to the delegation clause is itself enforceable must first be decided by the arbitrator." Ex. 11 at 6. | "[T[he question of whether section 19.7's 'carve out' to the delegation clause is itself enforceable should be decided by the arbitrator." Pet. at 13. |
| "Ironically, Temu itself has argued [in *Hu*] that any questions about the enforceability of the personal conference requirement in Temu's Terms should be resolved by the arbitrator and not by the courts." Ex. 11 at 5-6. | "Ironically, Temu itself has argued [in *Hu*] that any questions about the conference pre-condition in Temu's Terms should be resolved by the arbitrator and not by the courts. Pet. at 11. |

Arbitrator Welch evaluated these arguments through two rounds of briefing and rejected all of them. *See supra* at 8 (citing Ex. 15 § V). Petitioners are collaterally estopped from relitigating the same issues here. *See DePrima v. City of New York Dep't of Educ.*, 2014 WL 1155282, at *7 (E.D.N.Y. 2014) (Brodie, J.) (dismissing claim based on collateral estoppel: "At the heart of Plaintiff's arguments is that the IHO [arbitrator] came to an improper conclusion—although fashioned differently, the claim is the same. Plaintiff is therefore barred from relitigating the claim before this Court."); *see also Soliman v. Daimler AG*, 2011 WL 765885, at *7 (E.D.N.Y. 2011) ("[I]t is settled law that collateral estoppel is applicable to issues resolved by an earlier arbitration."), *report and recommendation adopted*, 2011 WL 765931 (E.D.N.Y. 2011); *Catalano v. Applied Biometrics Prods., Inc*., 2003 WL 22004902, at *6 (S.D.N.Y. 2003) ("[P]etitioner

cannot escape the collateral estoppel effect of the arbitration with respect to his … claims."); *Yulio v. Moore McCormack Lines, Inc.,* 387 F. Supp. 872, 876 (S.D.N.Y.1975) (holding that court action "is foreclosed by the determination made by the Arbitrator").

### B. The Process Arbitrator's Order Precludes the Court from Ruling That the Instant Dispute Should Be Decided by Merits Arbitrators

Petitioners next argue that "the Process Arbitrator's ruling … does not preclude this Court from ruling that these issues should be decided by the Merits Arbitrator" because "[c]ore merits issues … go beyond the scope of a Process Arbitrator's jurisdiction." Pet. at 8-9. It is unclear what Petitioners are arguing here. If they mean Arbitrator Welch's order exceeded her jurisdiction under the AAA rules, that is plainly wrong. The AAA promulgated the Mass Arbitration Supplementary Rules—and created the role of a Process Arbitrator—specifically to address preliminary, procedural issues in a streamlined fashion. *See supra* at 3.[12] Consistent with that, Rule MA-6 allows the AAA to appoint a Process Arbitrator to decide disputes about "whether parties have met [a] … filing requirement," "[d]isputes over any applicable conditions precedent," and "[a]ny other issue(s) the parties agree in writing to submit to the Process Arbitrator" (Ex. 9.3, at 6-7). Petitioners themselves—in the parties' Joint Statement of Issues—agreed to send the dispute over the AAA's jurisdiction to Arbitrator Welch. *See supra* at 8.

To the extent Petitioners are claiming that Arbitrator Welch's order is limited in some way so that it does not preclude the Court from sending this dispute to Merits Arbitrators, that argument also makes no sense. Arbitrator Welch's order made clear that the AAA—including any Merits Arbitrators—has no jurisdiction over the dispute unless and until a court resolves the issue of

---

[12] *See also* AAA, *Consumer Mass Arbitration* ("The Mass Arbitration Supplementary Rules are designed to enhance efficiency, save time, and reduce costs in high-volume cases."), https://www.adr.org/industries/consumer-mass-arbitration.

whether Petitioners have complied with the IDR provision. Ex. 15 at IV.B ("Because the AAA does not have jurisdiction at this time over the dispute, no merits arbitrator has jurisdiction to consider the question of whether § 19.2 is unenforceable because it is unconscionable … ."). The Process Arbitrator's jurisdictional ruling constitutes the determination of the AAA, and the Court has no authority to reverse the AAA's determination of its own jurisdiction.[13]

Nor are Petitioners entitled to challenge how the AAA applies its own rules—including its decision to send the jurisdictional issue to a Process Arbitrator rather than Merits Arbitrators. As Petitioners acknowledge, "the AAA's rules give the arbitrator broad power, including to rule on his or her own jurisdiction." Pet. at 10. And as the Ninth Circuit recently held in *Jones v. Starz Entertainment, LLC*, it is not the "business of a federal court to second-guess an independent arbitration provider's application of its own rule." 129 F.4th 1176, 1184 (9th Cir. 2025); *see also PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1198 (2d Cir. 1996) ("[T]he question who has the primary power to decide arbitrability turns upon what the parties agreed about that matter.").

## II.    THE AAA'S JURISDICTIONAL RULING WAS CORRECT IN ANY EVENT

Even if the Court were to find that collateral estoppel did not apply and opted to decide anew whether the AAA has jurisdiction over the parties' IDR provision dispute, the result should be the same.[14] Because there is a dispute over compliance with a precondition to arbitration, there is currently nothing for the parties to arbitrate. The Terms reserve that dispute for the Court.

---

[13] For that reason, Petitioners' reliance on the *Pandolfi* case provides no support for their argument. Pet. at 9. The court in *Pandolfi* evaluated whether a bellwether provision was unconscionable because of the delay it would impose on claimants. As part of the analysis, the court tried to predict whether Process Arbitrators could rule on unconscionability issues early so that claimants could avoid delay in litigating those issues. The court was not second-guessing a Process Arbitrator's ruling on the AAA's own jurisdiction or attempting to manage or overrule AAA's application of its own rules. *See Pandolfi v. AviaGames, Inc.*, 2024 WL 4051754 (N.D. Cal. 2024).

[14] Because collateral estoppel bars relitigating of these issues, the Court need only address the question of whether Petitioners satisfied the IDR provision as required by the Terms. *Infra* Section III. Temu includes these arguments solely in the event the Court disagrees that collateral estoppel applies.

### A.    This Dispute Is Fundamentally About Non-Compliance with a Condition Precedent, Which the Delegation Clause Carves Out for a Court to Decide

Temu's Terms are clear. A party may not proceed to arbitration without engaging in the IDR process, which "is a condition precedent and requirement that *must be fulfilled before commencing arbitration*." Terms § 19.2 . If there is a dispute over a party's compliance, the Terms provide that it "shall be decided only by a court of competent jurisdiction," not by an arbitrator. Terms § 19.7. There is obviously a dispute here about Petitioners' compliance with the IDR provision—they filed thousands of arbitration demands without first attending IDR conferences, and there is a dispute over whether they had any valid excuse for failing to do so. *See supra* at 8 (Joint Statement of Issues). Under the Terms, that dispute belongs in court.

Requiring disputes over compliance with a condition precedent to be litigated in court makes eminent sense. If Petitioners were permitted to disregard a condition precedent to arbitration simply by arguing that an arbitrator should decide its validity, "it would be setting a precedent that parties may disregard such conditions and pay no consequences," and "plainly render the [condition precedent] a nullity." *Stone & Webster, Inc. v. Ga. Power Co.*, 968 F. Supp. 2d 1, 10 (D.D.C. 2013). Accordingly, even in the absence of a carveout from a delegation clause, New York courts routinely bar parties from proceeding to arbitration until they have satisfied the condition precedent—and, as a corollary, they routinely require issues of compliance to be resolved by a court. *See, e.g.*, *Matter of Brenda DeLuca Tr.*, 108 A.D.3d 902, 903–04 (3d Dep't 2013) ("Whether a condition precedent to arbitration has been satisfied is a determination to be made by the courts in the first instance.").[15] This principle is expressly incorporated into the Terms by virtue of the

---

[15] *See also, e.g.*, Formal Dispute Resolution—Conditions Precedent to Arbitration, 33 N.Y.Prac., New York Construction Law Manual § 16:18 (2d ed.) ("Compliance with conditions precedent to arbitration is generally a question of law for the court to determine," and "failure to comply with an express condition

carveout in the delegation clause for disputes over compliance with a condition precedent, and thus is doubly applicable here.

Petitioners cannot circumvent the carveout simply by framing the instant dispute as being about the enforceability of—rather than compliance with—the IDR requirement. Pet. at 12-19. Petitioners' arguments about enforceability are being raised *as a defense* within a broader dispute about whether they have complied with the IDR process: They are claiming that they are excused from satisfying the IDR provision because it is unenforceable. Courts regularly entertain challenges to the enforceability of a contractual provision as a defense to alleged non-compliance with the provision. *See, e.g.*, *Ng v. HSBC Mortg. Corp.*, 2011 WL 3511296, at *8 (E.D.N.Y. 2011) ("Under New York law, unconscionability is an affirmative defense to the enforcement of a contract."); *Wells Fargo Bank, N.A. v. Bivona & Cohen, P.C.*, 2015 WL 5752595, at *7 (S.D.N.Y. 2015) (similar). This broader dispute is encompassed by the carveout to the delegation clause, which covers "*all* Disputes about whether either party has satisfied any condition precedent to arbitration." Terms § 19.7. The parties' Joint Statement filed with the Process Arbitrator itself acknowledges that Petitioners' enforceability challenge is bound up with the underlying dispute about compliance. *See* Turner Decl., Ex. C (Joint Statement) at 1 ("The parties dispute whether Claimants need to satisfy, or have already satisfied, the informal dispute resolution conference [] provision in Temu's Terms of Use[.]").

Especially in the circumstances here—where Claimants seek for the issue of enforceability to be resolved by various Merits Arbitrators in numerous arbitrations—allowing Petitioners to

---

precedent will bar the right to compel arbitration."); *Ambassador Constr. Co. v. 40 Wall St. Dev. Assoc., L.L.C.*, 264 A.D.2d 317, 318 (1st Dep't 1999) ("The question of whether a condition precedent [to arbitration] has been complied with is generally an issue for the courts … ."); *Niagara Frontier Transp. Auth. v. Computer Scis. Corp.*, 179 A.D.2d 1037, 1038 (4th Dep't 1992) ("[W]here the agreement expressly states that compliance with the contractual notice provision is a condition precedent to arbitration, the question of compliance is for the court to decide.").

proceed to arbitration without first satisfying the IDR prerequisite would fundamentally deprive Temu of the benefit that the IDR prerequisite was meant to provide. The clear intent of the provision is that parties should not be required to bear the costs of arbitration until they have first tried to resolve their disagreement through the IDR process. Petitioners are not at liberty to sidestep that prerequisite, regardless of how they frame the issues they wish to arbitrate. *See Harmony Rockaway, LLC v. Gelwan*, 200 A.D.3d 863, 864 (2d Dep't 2021) ("A court's fundamental objective in interpreting a contract is to determine the parties' intent from the language employed and to fulfill their reasonable expectations.").

### B.    The Carveout to the Delegation Provision Is Enforceable

Petitioners also attempt to evade the carveout in the delegation provision by arguing that the carveout itself is unenforceable and that the issue of *its* enforceability is for the arbitrator to decide. Pet. at 11-12, 13-14. Petitioners are wrong on both counts. Any challenge to the carveout is a challenge *to the delegation provision*, not the arbitration agreement more broadly, and as such it would be for a court to decide, as Petitioners' own cited case law makes clear. *See Pearl v. Coinbase Glob., Inc.*, 2023 WL 1769190, at *3 (N.D. Cal. 2023) (considering "whether the Delegation Clause is unenforceable"); *see also McCoy v. Dave & Buster's, Inc.*, 2018 WL 550637, at *7 (E.D.N.Y. Jan. 24, 2018) (finding that where "plaintiff specifically challenges the enforceability of the delegation clauses," "the Court must consider the challenge").[16] And in any event, the carveout in the delegation clause is enforceable. It merely embodies a principle, already recognized by New York courts that, "where [an] agreement expressly states that compliance with

---

[16] Petitioners cite language in *Pearl* that whether the dispute *falls into a carveout* to the delegation clause is a question for the arbitrator. Pet. at 13. But that is exactly what the Process Arbitrator decided here— she found, as she was authorized to do under the AAA rules, that the dispute was subject to the carveout and the AAA had no jurisdiction.

the contractual notice provision is a condition precedent to arbitration, the question of compliance is for the court to decide." *Niagara*, 179 A.D.2d at 1037.

Petitioners' various challenges to the enforceability of the carveout are meritless. Pet. at 15-16. The carveout is not unfair and one-sided, as it applies equally to Temu if Temu were to bring an arbitration demand; and "even if one party is more likely to avail itself " of a provision in an agreement, "there is nothing unconscionably one-sided about [that]." *Pearl*, 2023 WL 1769190, at *7 (enforcing nearly identical carveout to delegation clause). Nor is the carveout unconscionable based on Temu's supposed "superior bargaining power," Pet. at 15, as consumers are free to use other shopping apps and, even if they choose to use Temu, can opt out of the arbitration agreement (Terms § 19.10). *See Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 122 (2d Cir. 2010) ("[I]t is plain that [offering an arbitration agreement on a take it or leave it basis] is not sufficient under New York law to render the [arbitration] provision procedurally unconscionable."); *Pearl*, 2023 WL 1769190, at *7 (similar); *Faith v. Khosrowshahi*, 2023 WL 5278126, at *8 (E.D.N.Y. 2023) ("The ability to opt out of an arbitration provision is often a dispositive factor in rejecting procedural unconscionability challenges."). Finally, Petitioners' claim the carveout is prohibitively expensive and delays consumers from bringing their claims, Pet. at 16, is nonsense. Any consumer who wishes to bring a claim does not have to go to court first; they simply need to participate in the IDR process—which requires nothing more than participating in a phone call. *Infra* at 20. The only reason Petitioners are in court now is that they *chose to ignore* this costless requirement.[17]

---

[17] Nor is there anything inherently unconscionable about "piecemeal litigation" resulting from disputes over IDR compliance needing to be litigated in court. That is always a possibility where a delegation clause contains exceptions, and it does not make the exceptions unconscionable. *See KPMG LLP v. Cocchi*, 565 U.S. 18, 19 (2011) ("[I]f a dispute presents multiple claims, some arbitrable and some not, the former must be sent to arbitration even if this will lead to piecemeal litigation."); *Allstate Ins. Co. v. Elzanaty*, 929 F. Supp. 2d 199, 213 (E.D.N.Y. 2013) (similar). Petitioners say it "defies logic" for the Court to resolve a dispute over compliance with the IDR provision "before returning back to the arbitrator to [litigate

## III.    THE IDR PROVISION IS ENFORCEABLE

As discussed above, the Terms delegate to the Court the resolution of the parties' dispute over Petitioners' compliance *vel non* with the IDR provision. Petitioners argue that (i) the IDR provision is unconscionable, (ii) Temu waived its right to enforce it, and (iii) Petitioners have complied with the requirement "through counsel." *See* Pet. at 19-26. The arguments are all meritless. The Court should hold that the IDR provision is enforceable and has not been waived, and that Petitioners must comply before initiating arbitration, which they have failed to do here.

### A.    The IDR Provision Is Enforceable

As an initial matter, Petitioners' arguments about the alleged burdens imposed by the IDR process are misdirected. Rather than addressing the burden on *any individual consumer* to complete the IDR process—which is negligible—the Petition focuses on the burdens *on Kind Law* in representing many individual clients. Kind Law is of course free to represent as many claimants as it believes it can feasibly take on, but its choices in that regard in no way affect whether the IDR requirement is unconscionable *as to its individual clients*. In essence, Kind Law is seeking to pursue arbitration on behalf of all its purported clients collectively, without regard to procedural requirements that apply to those clients individually. But the Terms include a waiver of any right to seek relief "on a class, collective, representative, or mass action basis." Terms § 19.4; *Nayal v. HIP Network Servs. IPA, Inc.*, 620 F. Supp. 2d 566, 573 (S.D.N.Y. 2009) ("Courts … have uniformly held that class action waivers are not unconscionable."). Neither Kind Law nor its clients are free to disregard the requirements of the Terms simply because *Kind Law* would prefer to pursue a class-wide process that the Terms do not allow.

---

enforceability]." Pet. at 18. But as the AAA ordered, they may raise enforceability as a defense here, obviating any need to return to arbitration on that issue. *See supra* at 9.

19

For purposes of analyzing unconscionability, all that matters is the burden on each individual Petitioner. In that regard, the IDR provision requires nothing more than a short phone call to see if the parties can reach an agreement. Terms § 19.2. All parties, including the claimants, may have an attorney present; the statute of limitations and filing fee deadlines are tolled in the meantime; and should the parties not reach a resolution, the initiating party is free to immediately proceed to arbitration. *Id*. As this Court has stated in reference to Temu's IDR requirement, requiring the parties to meet and confer about informal resolution "is a tried and true practice" that the Could did not "find … to be problematic." *Ziboukh et al. v. Whaleco et al.*, Case No. 24-cv-03733 (E.D.N.Y. 2025), ECF No. 82-1 at 27:19-24.

The Ninth Circuit's decision in *Bielski v. Coinbase, Inc*. is instructive, as it upheld an IDR process that, if anything, was more complicated and time-consuming than Temu's. 87 F.4th 1003 (9th Cir. 2023). There, the Ninth Circuit addressed an "informal complaint process" that required the consumer to contact Coinbase's customer support, fill out a written complaint form (rather than just participating in a phone call), and wait for Coinbase's response prior to engaging in arbitration (rather than just having the call and not having to wait further after that). *Id.* at 1008. Despite that the customer was faced with a "bot" and could not reach a "human representative," the court held that the process was mutual given that Coinbase had obligations to review and respond to the complaint, and that it was not otherwise unconscionable, given that "pre-arbitration dispute resolution procedures are commonplace and can be both 'reasonable and laudable.'" *Id.* at 1014; *see also Am. Chung Nam, LLC v. Mitsui O.S.K. Lines, Ltd.*, 2023 WL 8845213, at *4 (C.D. Cal. 2023) ("It is commonplace to require informal efforts to resolve a dispute before engaging in more costly formal efforts."). Other courts have reached similar holdings. *See Meadows v. Cebridge Acquisition, LLC*, 132 F.4th 716, 732 (4th Cir. 2025) (finding that the IDR process served a

"commercially reasonable purpose by allowing both parties the opportunity to resolve disputes informally without incurring the expense of arbitration"); *Shelby v. Brookdale Senior Living Inc*., 2021 WL 718183, at *4 (D. Ariz. 2021) ("One can appreciate why informal dispute resolution is ideal. When effective, it saves the parties time and money."), *aff'd*, 2022 WL 1657245 (9th Cir. 2022); *Davenport v. Nvidia Corp*., 719 F. Supp. 3d 1019, 1030 (N.D. Cal. 2024) (enforcing IDR requirement similar to Temu's); *White v. Four Seasons Hotels & Resorts*, 999 F. Supp. 2d 250, 261 (D.D.C. 2013) (enforcing IDR process even where claims would only be brought by employees); *In re BAM Trading Servs. Inc. Sec. Litig.*, 733 F. Supp. 3d 854, 868 (N.D. Cal. 2024) (enforcing IDR process).[18]

Petitioners' main contention is that the IDR process is one-sided and Temu uses it to get a "free peek" at a Petitioner's case—because it supposedly requires a claimant, but not Temu, to "preview" their case. Pet. at 15, 19-20. Not so. The IDR on its face applies equally to Temu, providing that "*we* will personally meet and confer telephonically." Terms § 19.2. And the provision does not require a claimant to "preview" their case. It simply requires both sides to meet "in a good faith effort to resolve [their dispute] informally." *Id.* Naturally, as part of that discussion,

---

[18] The cases cited by Petitioners are distinguishable, because in each: (i) the agreement and pre-dispute resolution processes were not mutual; (ii) the agreements did not toll relevant deadlines; and/or (iii) the claimants were prohibited from having counsel present. *See e.g.*, *Nyulassy v. Lockheed Martin Corp*., 120 Cal. App. 4th 1267, 1282 (2004) (addressing "arbitration clause [that] plainly contains only a unilateral agreement to arbitrate"); *Pokorny v. Quixtar, Inc*., 601 F.3d 987, 998 (9th Cir. 2010) (addressing agreement that "placed stringent time limitations on the plaintiff's assertion of [] claims … without placing any similar limitations on the defendant's right"); *McKinney v. Bonilla*, 2010 WL 2817179, at *8 (S.D. Cal.2010) (addressing process that "[b]arr[ed] employees from being represented by counsel during an interview by company employees while allowing the employer to be represented by its in-house counsel"). Petitioners' reliance on *MacClelland v. Cellco P'ship* is even less apposite. That case did not even involve an informal dispute resolution process—but rather a bellwether process that required claimants "to wait months, more likely years before they can even submit a demand for arbitration." 609 F. Supp. 3d 1024, 1041-42 (N.D. Cal. 2022). None of those issues is present here, as Temu is equally required to arbitrate; all relevant deadlines are tolled, and all parties may have counsel present. Terms § 19.2; *see also Tercero v. Sacramento Logistics LLC*, 2025 WL 43125, at *9 (E.D. Cal. 2025) (rejecting comparison to *MacClelland* as "plainly inapposite" because the process at issue "tolls the statutes of limitations").

Temu may ask questions about the nature of the claimant's concerns—so that it can see if it can address those concerns on the call. Likewise, a claimant may ask Temu questions relating to what they are concerned about. However, there is no requirement that either side provide any detailed recitation of evidence or explanation of how they intend to prove their case. *See Valdez v. Genesis Healthcare LLC*, 2019 WL 6604868, at *8 (C.D. Cal. 2019) (finding no unfair free peak where process was mutual).[19] Petitioners complain that there is no "neutral mediator" involved in the process, Pet. at 20, but the law does not require that, and it is hard to see why that would even benefit Petitioners, as it would defeat the informal nature of the conferences and only increase the burden on the parties.

Petitioners also argue that the IDR process increases costs and leads to delay by "bottlenecking" claims because the Terms "seek[] to require thousands of individual conferences before arbitration can proceed." Pet. at 21-22. But any purported "bottlenecking" is entirely the result of *Kind Law's litigation strategy—i.e.*, its choice to represent (or purport to represent) thousands of clients and submit arbitration demands on behalf of all of them simultaneously, without being willing or able, apparently, to accompany them individually in IDR conferences. The Terms require that any disputes be pursued individually, however, and Kind Law is not at liberty to litigate in a class-wide or consolidated fashion merely because individualized dispute resolution does not fit with its business model. Moreover, no "bottlenecking" even occurred here. Kind Law proposed a speedy schedule for 9,000 IDR conferences to occur over 58 days. Temu agreed to, and was fully prepared to meet, that schedule. Turner Decl., Ex. B (February 2, 2024

---

[19] Even if the IDR provision required a consumer to give Temu a "free peek" at their case—and it does not—that would not render the provision unconscionable. *Bielski*, 87 F.4th at 1015 ("It is undisputed that only Coinbase's users must engage in the pre-arbitration dispute resolution process, giving Coinbase a 'free peek' at users' potential claims without affording users that same opportunity. But we do not find these pre-arbitration procedures to be overly harsh or unfairly one-sided.").

Email from Kind Law). It was *Kind Law* that cancelled the conferences after only five were completed. If Kind Law was not prepared to participate in the volume of conferences they scheduled, then it should not have scheduled them in the first place.

Finally, Kind Law's contention that the IDR provision is unconscionable is hard to take seriously given that Kind Law requires *its own clients* to sign on to a *more burdensome* IDR requirement in its own retainer agreements. Specifically, Kind Law's agreement—which was surfaced in the lawsuit brought against it over the firm's mass arbitration tactics—requires the parties to agree that if there is a "dispute about this contract or our services … we will first try to settle it through direct discussions," and if that does not work, the parties must *then* "try to settle the dispute by mediation"; only after that is a client allowed to arbitrate. *See* Turner Decl. Ex. E § 11 (Kind Law Retainer Agreement); *see also* Ex. 13 at 8. Kind Law cannot be heard to complain about Temu's one-step IDR process when it imposes a *two*-step IDR process on its own clients.

## B.    Temu Did Not Waive Its Rights to Enforce the Requirement

Petitioners' next argument—that Temu waived its right to enforce the IDR requirement—makes little sense. Pet. at 23-24. Waiver occurs where a party "intentionally relinquishe[s] or abandon[s]" an argument, *Puckett v. United States*, 556 U.S. 129, 138 (2009), and "the party asserting waiver bears a heavy burden to establish it." *In re Bartin Deniz Nakliyati*, 1989 WL 128581, at *11 (E.D.N.Y. 1989). Petitioners point to no facts showing that Temu intentionally abandoned its right to insist on enforcement of the IDR provision. Indeed, the very point of this litigation is that Petitioners object to Temu's enforcement of that requirement. Ex. 15 § V.A. (ruling that Temu's "very insistence on IDR conferences in this proceeding demonstrates its intention to assert that right" and therefore negates any waiver argument).

Petitioners argue that Temu's alleged "bad faith" in the five conferences that went forward

"constitutes a waiver of the condition precedent to arbitration." Pet. at 23-24. Petitioners' self-serving characterization of the conferences is false (*see* Ex. 5), but even if Petitioners could demonstrate any bad faith as to those five conferences, that would not imply that Temu intended to relinquish any right under the Terms. *See, e.g.*, *Jofen v. Epoch Biosciences, Inc*., 2002 WL 1461351, at *7 (S.D.N.Y. 2002) ("[A] waiver of a contractual condition is not lightly presumed under New York law: the intent to waive must be unmistakably manifested, and is not to be inferred from a doubtful or equivocal act."), *aff'd*, 62 F. App'x 410 (2d Cir. 2003). Petitioners' cited cases are inapposite: They address not waiver, but situations where a party's compliance with a condition precedent is rendered *impossible* by the other party.[20] Here, nothing has rendered it impossible for *Petitioners* to comply with the IDR process in good faith. They can easily show up and participate at IDR conferences even if they do not like what Temu has to say; if the conferences do not resolve their concerns, they are free thereafter to proceed with arbitration. The doctrine of impossibility does not allow a party to escape a contractual obligation merely because they would prefer that the other side conduct itself differently. *See, e.g.*, *Siemens Energy, Inc. v. Petroleos de Venezuela, S.A.*, 82 F.4th 144, 153 (2d Cir. 2023) (rejecting impossibility defense and noting that "[i]mpossibility excuses a party's performance only when … performance [is] objectively impossible" ); *BOCA Aviation Ltd. v. AirBridgeCargo Airlines, LLC*, 669 F. Supp. 3d 204, 232 (S.D.N.Y. 2023) ("impossibility should be applied … only in extreme circumstances").[21]

---

[20] *See Utica*, 906 F.3d at 22 (finding condition was not impossible to satisfy); *Stern v. Gepo Realty Corp*., 289 N.Y. 274, 277 (1942) (finding condition was impossible to satisfy); *Young v. Hunter*, 6 N.Y. 203, 206 (1852) (same).

[21] Petitioners also argue waiver based on a supposed "agreement" by Temu to mediate with them, *see* Pet. at 4, 23, but they merely point to an email from Kind Law directed to Temu's previous counsel indicating that Kind Law was "amenable" to mediation, Ex. 16—not any "agreement" to do so. Further, weeks after that, Petitioners submitted notice of claims explicitly stating that they "intend on pursuing a dispute in private arbitration," *not mediation. See* Ex. 2.

### C.    Petitioners Have Failed to Comply with the IDR Provision

Finally, Petitioners argue in the alternative that their thousands of clients should be deemed to have "substantial[ly] perform[ed]" their obligation to attend IDR conferences, by virtue of attending "through counsel." Pet. at 24-25. The argument is plainly meritless. The Terms expressly provide that claimants themselves must individually participate, Terms § 19.2. That is why Kind Law initially scheduled *individual* conferences for thousands of clients. Likewise, the five conferences that went forward were designated for five specific individuals; Kind Law did not purport to be representing anyone else at those conferences. Nor could it have, as the Terms do not contemplate a claimant participating merely "through counsel." *See* S*tolt-Nielsen*, 559 U.S. at 682 ("[A]greements to arbitrate [must be] enforced according to their terms.").

Moreover, under New York law, "substantial performance is ordinarily not applicable to excuse the non-occurrence of an express condition precedent." *United States v. Hernandez*, 404 F. App'x 521, 523 (2d Cir. 2010); *see also Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co*., 86 N.Y.2d 685, 692 (1995) ("If the parties have made an event a condition of their agreement, there is no mitigating standard of materiality or substantiality applicable to the non-occurrence of that event."). While Petitioners may claim that the "departure from full performance 'is an inconsiderable trifle,'" Pet. at 26, they are not entitled to rewrite or ignore what the agreement itself says. Any Petitioner who did not personally participate in an IDR conference failed to comply, and that failure cannot be excused under the doctrine of "substantial performance."

### CONCLUSION

For the reasons above, the Petition to Compel Arbitration should be dismissed on the ground that Petitioners have failed to comply with an enforceable condition precedent.

25

Dated:  June 26, 2025

Respectfully submitted,

Serrin Turner
Matthew Valenti
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 906-1200
Facsimile:  (212) 751-4864
Email:  serrin.turner@lw.com
        matthew.valenti@lw.com

*Attorneys for Respondent Whaleco Inc. d/b/a Temu*