# **EXHIBIT A**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| SCPS, LLC and SSPS, LLC,<br><br>              Plaintiffs,<br><br>vs.<br><br>KIND LAW and BEN TRAVIS LAW,<br><br>              Defendants. | Index No. |

## COMPLAINT

Plaintiffs SCPS, LLC ("Zula") and SSPS, LLC ("Sportzino," and together with Zula, "Plaintiffs"), by and through their undersigned counsel, as and for their Complaint against Kind Law and Ben Travis Law (collectively, "Defendants"), hereby allege and aver as follows:

## INTRODUCTION

1.  Plaintiffs operate free-to-play social gaming websites that allow registered users to play several different online games. They bring this action because they have been victimized by a scheme of the Defendant law firms, Kind Law and Ben Travis Law, to file hundreds of arbitration demands against Plaintiffs on behalf of individuals who never authorized Defendants to do so, or who are complete strangers to Plaintiffs, in order to extort strike-suit settlements from Plaintiffs.

2.  Defendants used a misleading social media advertising campaign purportedly to enroll hundreds of so-called "clients" to file meritless arbitration demands against Plaintiffs before the American Arbitration Association (the "AAA"). Defendants thereby hoped to confront Plaintiffs with the crushing administrative fees the AAA will charge at the commencement of a large number of consumer arbitrations, in hopes of forcing an early settlement.

3. The scheme is simple. The more arbitrations Defendants file, the more Plaintiffs will have to pay the AAA to administer those arbitrations. With their eyes on a big pay day, Defendants threw caution (and their ethical obligations) to the wind and filed hundreds of arbitrations on behalf of users of Plaintiffs' websites who, in reality, never authorized them to file anything. They also filed sham arbitrations on behalf of individuals who have never used Plaintiffs' websites (and therefore have no arbitration agreement with Plaintiffs or basis to bring a claim), and on behalf of users of Plaintiffs' websites who agreed to arbitrate in an arbitral forum other than the AAA.

4. In order to halt these improper arbitrations, Plaintiffs filed suit in federal court under the Federal Arbitration Act (the "FAA") and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 (the "New York Convention"), seeking to enjoin the AAA arbitrations. The ink on Plaintiffs' pleadings was barely dry when additional claimants began disavowing, in writing, ever having authorized Defendants to file any legal claim on their behalf. Some of them even accused Defendants of running a scam.

5. As the truth continued to unfold, Defendants started dismissing AAA arbitrations. All told, Defendants voluntarily dismissed 209 claimants from the AAA proceedings, many of whom had filed multiple demands (one against Zula and one against Sportzino). As the sequence of events makes clear, Defendants filed those arbitrations maliciously and without any authorizations from users of Zulu and Sportzino. Defendants' unauthorized arbitrations are in addition to the arbitrations they filed on behalf of 116 AAA claimants who are complete strangers to Zula and Sportzino and have no basis to assert any claim or to commence an arbitration.

6. By their conduct, Defendants have caused, and will continue to cause, significant harm to Plaintiffs' business, goodwill, and reputation in the industry. Plaintiffs have also incurred

significant costs and expenses prosecuting a federal action that ultimately led Defendants to withdraw 273 unauthorized arbitration demands on behalf of 209 individual claimants.

## PARTIES

7. Plaintiff Zula offers the Zula Casino social gaming website.

8. Plaintiff Sportzino offers the Sportzino social gaming website.

9. Defendant Kind Law is, on information and belief, a law firm located in Nevada.

10. Defendant Ben Travis Law is, on information and belief, a law firm located in California.

## JURISDICTION AND VENUE

11. The Court has personal jurisdiction over Defendants pursuant to CPLR § 302 because, as part of their scheme to harm Plaintiffs, they committed tortious acts and transacted business within the State of New York by, among other things, unleashing a false and misleading advertising campaign targeted to Plaintiffs' users, some of whom reside in New York, falsely claiming that they enrolled those New York residents, and filing unauthorized arbitration demands purportedly on their behalf. Through their false advertising campaign, Defendants also filed sham arbitrations on behalf of several residents of New York who were not actually users of Zulu or Sportzino. In doing so, they transacted business within the State of New York by purporting to create attorney-client relationships with residents of the State of New York.

12. Venue is proper in the County of New York under CPLR § 503(a) because none of the parties to this lawsuit reside in this State.

## FACTS

### Plaintiffs' Business

13. Zula and Sportzino operate free-to-play social gaming websites. These sites allow registered users to play various online games without the use of real money.

3

14. For playing purposes, users receive virtual "Gold" coins free of charge when they establish an account, log into their account, or through other promotions. Users receive free Gold coins upon every login and also when their balance of Gold coins runs low. Users may, but are not required to, purchase additional virtual Gold coins for use in the games.

15. Users cannot exchange their Gold coins for cash. There are no "real world" prizes awarded through Gold coin games. Rather, users may only win additional Gold coins, which can be used for further entertainment play. Gold coins have no other use. They can never be redeemed or transferred.

### Defendants' Social Media Advertising Campaign and AAA Arbitration Demands

16. In early 2024, Kind Law and Ben Travis Law began an advertising campaign on social media platforms such as Facebook, seeking to recruit large numbers of individuals to file claims against companies that operate social gaming websites. The advertisements target virtually the entire social gaming industry with a one-size-fits-all advertisement.

17. Defendants solicited anyone who had made purchases on any of dozens of social gaming websites to sign up in order to receive potential compensation: "If you made in-app purchases to play in social casino applications from certain developers in the last two years, you may be entitled to seek compensation. Click to sign up to get more information and to have an attorney review your potential case."

18. Individuals who clicked "to sign up" were then brought to an online questionnaire, which asked the individual to indicate whether they played any of 97 different online games offered by a wide variety of companies. Zula and Sportzino were only two of those 97 online games.

19. Individuals who completed the questionnaire supposedly "retained" Defendants as their counsel. The preeminent goal of this process was the recruitment of mass numbers of individuals who were misled about a pay day for bringing claims against Zula and Sportzino. Other considerations (such as securing actual consent to file arbitration demands, disclosing relevant information to would-be clients, and conducting appropriate diligence regarding individuals' standing to assert such claims) took a back seat to a desire to amass as many claimants as possible.

20. This is evident for several reasons:

a. The advertisements failed to advise would-be clients of the goals that Defendants sought to achieve—that is, a declaration that the Zula and Sportzino websites conducted "unlawful" gambling and an injunction prohibiting the websites "from engaging in the unlawful actions complained of herein."

b. Defendants' advertisements failed to advise prospective clients that the claims, if successful, would terminate their ability to use the websites. As quoted above, the advertisement simply asked whether individuals had "spent money to play," asserted that "[y]ou may be entitled to compensation," and urged individuals to "sign up." The ads disclosed nothing about terminating users' ability to play social games by alleging those games were "illegal."

c. This absence of disclosure placed the wishes of the prospective clients and the goals of Defendants in clear and direct conflict.

d. The "client enrollment" process also failed to perform basic due diligence to determine whether a potential client even had a potential claim against Zula or Sportzino.

5

21. Defendants had no evident process to diligence whether an individual who filled out a questionnaire regarding 97 different online games was, in fact, a registered Zula or Sportzino user.

22. The questionnaire asked about a broad series of nearly 100 different games on over 20 different social gaming platforms that have nothing to do with Zula or Sportzino (*e.g.*, Quick Hit Slots, Monopoly Slots, 88 Fortune Slots, Jackpot Party, Gold Fish Slots, MyVegas Slots, MyKonami Slots, Cash Franzy Casino Slots, or Jackpot World).

23. Defendants then used the responses to blindly issue mass demands to all of these social gaming companies (and not just Zula and Sportzino).

24. The advertising campaign succeeded in amassing thousands of claimants.

25. Defendants then began bombarding Zula and Sportzino with "notices of dispute" in purported compliance with the informal-dispute resolution requirements set forth in Plaintiffs' Terms & Conditions that govern the use of the gaming sites (the "<u>Terms and Conditions</u>"). While each notice is supposedly submitted on behalf of a single individual claimant, the notices are otherwise identical in text.

26. On or about August 14, 2024, Defendants filed 667 individual demands for arbitration with the AAA against Zula. Two days later, on or about August 16, 2024, Defendants filed 299 substantively identical individual demands for arbitration with the AAA against Sportzino (collectively, the "<u>Demands</u>").

27. At least 79 of the claimants named in these Demands reside in the State of New York.

28. Each Demand is the same, except for the name of the claimant. The Demands assert that the Zula and Sportzino sites "operate illegal gambling games." They seek damages under

several theories, a declaration that Zula and Sportzino conduct illegal gambling on their websites, and an injunction to prohibit them from continuing to do so in the future.

### Plaintiffs' Investigation

29. Using the information disclosed in the Demands, Plaintiffs investigated the claimants. That investigation confirmed that, in their zeal to enroll as many claimants as possible through Facebook and other social media solicitations, Kind Law and Ben Travis Law performed little or no diligence on their purported clients.

30. For instance, 186 claimants were not, in fact, registered users of the Zula or Sportzino websites. And 464 claimants accepted revised Terms and Conditions that require arbitration before a different arbitral tribunal, ADR Chambers in Ontario, Canada.

31. Plaintiffs also confirmed that many of the claimants never authorized Defendants to file any action on their behalf. The Demands assert that Zula's and Sportzino's social games are illegal. Zula and Sportzino are under no legal requirement to make their services available to any specific individual especially where, as here, that individual is purportedly alleging the illegality of the activity. Accordingly, Zula and Sportzino began suspending the accounts of select AAA claimants whose Demands asserted the illegality of the social games.

32. In response to Plaintiffs' suspension notices, dozens of claimants reported that they were unaware that Kind Law and Ben Travis Law had filed arbitration demands on their behalf and/or denied that they had authorized Kind Law and Ben Travis Law to do so.

33. As one such claimant stated:

> I am writing this message to clarify that I am NOT represented by any law firms such as Kind Law & Ben Travis, nor am I affiliated with them in any way. I have also contacted these law firms personally via email and informed them that if they use my information against your site, I will be forced to seek legal representation, as I have not authorized any dispute or arbitration.

Furthermore, I will seek legal representation against said law firms if necessary.

34. Other claimants said:

- "This is false and I have not done anything of the sort."
- "This information is incorrect. I am not being represented by any legal entity."
- "No. I have not done so I have no lawyer or lawsuits against anyone if there is [it is] not with my consent."
- "I've contacted the law firm that is stating they're representing me and I'm waiting for them to issue a letter to myself as well as Zula confirming I'm not pursuing any claim against Zula."

35. Other claimants denied that they had ever been in contact with Kind Law or Ben Travis Law at all, and had certainly not authorized them to file a Demand on their behalf:

- "[N]o one has contacted me about a law firm or anything like this so I'm not understanding what is doing on. . . . [N]obody has ever contacted me about this so this does not make sense to me at all."
- "Hello what are y'all talking about? I don't have any legal action against y'all that makes no sense."
- "I'm not [able] to access my account. But I believe it has something to do with a legal issue that I am not involved in. I am not represented by any legal councel [sic]."

36. One claimant bluntly accused Kind Law and Ben Travis Law of running a "scam," stating "is this scam or what I never said or did any of the things u saying."

### Plaintiffs' Complaint and Application for Injunctive Relief

37. On September 27, 2024, Plaintiffs filed a Complaint before the United States District Court for the District of Columbia captioned *SCPS, LLC and SSPS, LLC v. Kind Law and Ben Travis Law, et. seq.* (No. 1:24-cv-02768), seeking injunctive and other relief under the FAA and the New York Convention against Defendants and the claimants they purported to represent in the AAA proceedings.

38. Contemporaneously with the filing of the Complaint, Plaintiffs filed an application for preliminary injunctive relief seeking to, among other things, enjoin Defendants from prosecuting AAA actions on behalf of users who never authorized them to do so.

39. Plaintiffs sent waivers of service to the claimants and notified them of the injunctive relief motion. In response to these notices, even more of Defendants' supposed "clients" continued to report that they had *not* retained either of the firms and had *not* authorized them to file any arbitrations on their behalf.

40. As the individuals stated in response to receiving the waiver:

- "I did not agree to be represented in this matter nor was I involved in anything against sportzino or zula. I gave no permission nor consent to anything having to do with either company listed in this complaint. What should I do? I enjoy both sites and I want nothing to do with this."

- "I dont have any idea about this Lawsuit. I didnt file any lawsuit"

41. From the get-go, it became very clear that Defendants had filed AAA arbitration demands on behalf of hundreds of "clients" who never wanted or agreed to do so. Indeed, Defendants ended up filing a motion to dismiss and an opposition to Plaintiffs' injunctive relief motion *only* on their own behalf and not on behalf of any of the claimants.

**Defendants Are Forced To Withdraw
More Than 200 Unauthorized AAA Arbitrations**

42. On November 13, 2024, the Honorable Paul L. Friedman, U.S.D.J. held a hearing on Defendants' motion to dismiss. During the hearing, the Court asked Defendants whether they represented the AAA claimants in that action. Defendants confirmed they did not. But they told the Court they were going to confirm who they actually represented.

43. It took Defendants three months just to identify who they represent. And, remarkably, Defendants confirmed that they did not represent a huge portion of the claimants on

whose behalf they filed AAA arbitrations. In particular, of the total number of 707 individual claimants, Defendants themselves disavowed representation of ***209*** of them, or roughly 30% (the "Unauthorized Claimants"). The Unauthorized Claimants are identified in **Addendum A**.

44. On February 7, 2025, Defendants instructed the AAA to dismiss the proceedings they filed on behalf of the Unauthorized Claimants. Then, on February 8, 2025, the parties filed a stipulation dismissing the Unauthorized Claimants from the Federal Action.

## FIRST CLAIM FOR RELIEF
**Malicious Prosecution**

45. Plaintiffs re-allege and incorporate by reference all allegations in the foregoing paragraphs as if fully set forth herein.

46. Defendants improperly filed arbitrations on behalf of users who never authorized them to do so.

47. After Plaintiffs filed suit to enjoin those arbitrations, Defendants dismissed them.

48. Defendants had no probable cause to file those arbitrations, which lacked any basis in law and fact.

49. Defendants filed the arbitrations with malice and for the sole purpose of harming Plaintiffs in order to extort strike-suit settlements from them that would benefit Defendants.

50. Defendants' malicious conduct has caused, and will continue to cause, substantial and significant harm to Plaintiffs and their businesses, goodwill, and reputation in the industry. Defendants disrupted Plaintiffs' contractual relationships with the Unauthorized Claimants, forcing them to send suspension notices to some of the Unauthorized Claimants and then sue them in federal court. Defendants hindered Plaintiffs' ability to engage new users. Plaintiffs were also forced to expend substantial costs and resources prosecuting an action to enjoin the arbitrations.

51. Plaintiffs have suffered and will suffer damages in an amount to be determined at trial. Punitive damages should also be awarded.

## SECOND CLAIM FOR RELIEF
### Tortious Interference With Prospective Business Relations

52. Plaintiffs re-allege and incorporate by reference all allegations in the foregoing paragraphs as if fully set forth herein.

53. As detailed above, Defendants instituted arbitrations on behalf of users who never authorized them to do so and on behalf of individuals who were never users of Zulu or Sportzino.

54. Defendants engaged in this conduct in order to harm Plaintiffs' business and hinder their ability to engage new users.

55. Defendants' conduct in fact harmed Plaintiffs' business and hindered their ability to engage new users.

56. As a result of Defendants' tortious interference with Plaintiffs' prospective business relations, Plaintiffs have suffered and will suffer damages in an amount to be determined at trial. Punitive damages should also be awarded.

## THIRD CLAIM FOR RELIEF
### Prima Facie Tort

57. Plaintiffs re-allege and incorporate by reference all allegations in the foregoing paragraphs as if fully set forth herein.

58. Defendants intentionally filed arbitrations without authorization and on behalf of individuals who were not users of Zulu or Sportzino in order to cause harm to Plaintiffs.

59. Defendants' intentional conduct in fact caused Plaintiffs harm.

60. Defendants had no justification for filing arbitrations on behalf of customers who never authorized them to do so and on behalf of individuals who were never users of Zulu or Sportzino.

61. As a result of Defendants' tortious conduct, Plaintiffs have suffered and will suffer damages in an amount to be determined at trial. Punitive damages should also be awarded.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray that this Court grant the following relief:

A. Award of compensatory, special, and punitive damages in an amount to be determined at trial;

B. Pre-judgment and post-judgment interest on any portion of damages that is awarded for a liquidated amount;

C. Plaintiffs' reasonable costs and attorneys' fees incurred in this action; and

D. Such other and further relief as to the Court deems just and proper.

DATED: New York, New York
February 25, 2024

**LOWENSTEIN SANDLER LLP**

By: */s/ Gavin J. Rooney*
Gavin J. Rooney
Reynold Lambert
1251 Avenue of the Americas
New York, New York 10020
(646) 414.6936
grooney@lowenstein.com
rlambert@lowenstein.com

*Attorneys for Plaintiffs*

## ADDENDUM A

### List of Unauthorized Claimants

1. Adams, Sarah
2. Aguirre, Daniel
3. Aguirre, Jacqueline
4. Aguirre, Margarita
5. Aldaco, Laura
6. Amschler, Justin
7. Arredondo, Linda
8. Askew, Saffire
9. Aspiri, Matthew
10. Aston, Christine
11. Ayala, Sergio
12. Baiz, Tina
13. Ballinger, Bobbilee
14. Bell, Richard
15. Blasier, Casey
16. Bonifacio, Estanislao
17. Brown, Andrea
18. Cabrales, Ashton
19. Camp, Aaron
20. Carlton, Ryan
21. Carrasco, Erika
22. Carville, James
23. Castro, Carlos
24. Chastine, Heather
25. Chi, Ian
26. Chidester, Evan
27. Chiles, Joseph
28. Clair, Gina
29. Coan, John
30. Corona, Aglaeth
31. Cottrell, Justin
32. Creel, Ronie
33. Cruz, Ted
34. Daddario, Paul
35. Davis, Courtney
36. De La Garza, Alonzo
37. Dedmon, Elizabeth
38. Delgado, Nelson
39. Depew, Eric
40. Desantiago, Francisco
41. Devera, Nikita
42. Diaz, Mario
43. Dougher, Donald
44. Duarte, Jacquelyn
45. Duran, Moises
46. Ebrahimi, Hakim
47. Enriquez, Billy
48. Escalante, David
49. Escalante, Vincent
50. Espinoza, Manuel
51. Espinoza, Melissa
52. Evans, Marion
53. Evens, Corey
54. Farner, Nichole
55. Feiereisen, Joseph
56. Ferryman, Jared
57. Fleming, Jamie
58. Francis, James
59. Frank, Broderick
60. Gallegos, Gabrielle
61. Garcia, Albert
62. Garcia, Joaquin
63. Garcia, Monique
64. Gemme, Kyle
65. Gessner, Robert
66. Gil, Anthony
67. Glathe, Danielle
68. Goatley, Melissa
69. Gollaher, Erin
70. Gomez-Cortez, Joselin
71. Gonzales, Nicholas
72. Gonzalez, Maria Delrosario
73. Graves, Samantha
74. Grenz, Victoria
75. Gutierrez, Vanessa Rae
76. Hall, Deborah L
77. Hall, Sunshine
78. Hardy, Ryan
79. Harris, Krissy
80. Harris, Martha
81. Harvey, Joseph
82. Herrera, Isaac
83. Higgins, Michael
84. Hilario, Michelle
85. Hogue, Sarah
86. Holck, Jeramiah
87. Holmon, Elizabeth
88. Ireland, Jessica
89. Ismail, Ibrahim
90. Jackson, Latisha
91. Jenkins, Roshanda
92. Jensen, Ashley
93. Jimenez, Leticia
94. Jimenez, Marissa
95. Johnson, Maria
96. Julhakyan, Arshak
97. Kaady, Zachariah
98. Keczely, Richard
99. Kidson Sr., Richard
100. Kiley, Brandi
101. King, Randy
102. Kirkpatrick, Amanda
103. Kompa, Ryan
104. Koolick, Kimberly
105. Kraxberger, Devon
106. Kuykendall, Casey
107. La, Ja
108. Lai, Tu
109. Lan, Davy
110. Lane, Dylan
111. Lara, Christian
112. Lasanta, Georgetta
113. Lauro, Alexander
114. Lawson, Gary
115. Le, Timothy
116. Lemmon, Jeff
117. Llanes, Luis Francisco

A-1

118. Lopes, Robert
119. Lopez, Crystal
120. Lopez, Maria
121. Luna, William
122. Lynn, Deandre Leon
123. Macabeo, Francis
124. Maness, Carrie
125. Martin, David
126. Martin, Randy
127. Martinez, Jordan
128. Martinez, Stephanie
129. Marts, Johnnylee
130. Mauldin, Mason
131. Mayton, Vicki
132. McCrary, Anthony
133. McCrory, Benjamin
134. McGrath, Talisa
135. McKay, Brian
136. McNish, Jama
137. Melero, Kelley
138. Mendez, Vanessa
139. Mendoza, Javier
140. Mijango, Helen
141. Miles, Mark
142. Millan, Jorge
143. Miller, Desiree
144. Moore, Emmerich
145. Moore, Lillian
146. Moore, Nicole
147. Moua, Pang
148. Murray, Austin
149. Nagle, Amy
150. Nash, Julia
151. Nelson, Jessica
152. Nitz, Brian
153. Ochoa, Miguel
154. Pagan, Earl
155. Palski, Melissa
156. Pergola, Gennaro
157. Phan, Cathy
158. Philippi, Lacey
159. Phillips, John
160. Pitts, Christopher
161. Prom, Rina
162. Provost, Anthony
163. Pustam, Keiffer
164. Ramirez, Elizabeth
165. Ramirez, Roderick
166. Raneses, Maria
167. Reeves, Megan
168. Rhodes, Clare
169. Ricketts, Gary
170. Roberson, Shawn
171. Rodriguez, Jesus
172. Rodriguez, Jose
173. Roman, Constance
174. Romero, Brian
175. Romero, Jesse
176. Roth, Christopher
177. Ruiz, Susan
178. Salas, Mauricio
179. Sanchez, Veronica
180. Scott, Tanyel
181. Serrano, Amber
182. Silva, Giselle
183. Sims, Amber
184. Sison, Juriz
185. Smith, Chrisiah
186. Smith, Jodi
187. Smith, Katelyn
188. Sogiar, Ashlee
189. Solis, Katie
190. Sorlien, Ryan
191. Stewart, Crystal
192. Stone, Shannon
193. Tait, Laurieann
194. Thomas, Jennifer
195. Timmons, Joseph
196. Valencia Jr, Jose Juan
197. Vang, Susan
198. Verrett, Pamela
199. Vigil, Miguel
200. Villanueva, Oliver
201. Villegas, Edson
202. Vinson, Kathleen
203. Vue, Doua
204. Wade, Aundrea
205. Waldron, Mikala
206. Wheeler, Chris
207. Wikowski, Daryl
208. Yang, Jeraly
209. Zamarron, Eduardo

2