## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Aalany McMahan, Isaac Dwek, Luke Seagraves, Avrohom Shor, Ariella Shor, and the other claimants listed in Appendix A, | Case No.: 1:25-cv-01590-MKB-RML |
| Petitioners, | |
| v. | |
| Whaleco, Inc. dba Temu, | |
| Respondent. | |

### PETITIONERS' RESPONSE IN OPPOSITION TO RESPONDENT'S MOTION TO DISMISS

Aalany McMahan, Isaac Dwek, Luke Seagraves, Avrohom Shor, Ariella Shor, and the other claimants listed in Appendix A ("Petitioners"), through counsel, hereby submit their memorandum of points and authorities in opposition to Whaleco, Inc. dba Temu's ("Temu" or "Respondent") motion to dismiss their Petition for an order compelling arbitration before the AAA, pursuant to the Federal Arbitration Act, 9 U.S.C. § 4.

This brief is based upon the accompanying memorandum of points and authorities, all papers and records on file herein and on such oral arguments which may be presented at the hearing of the petition and motion.

# Table of contents

I.    Introduction ................................................................................................................1

II.   Temu's scheme to evade consumer protection laws by dodging both class actions and arbitration ..............................................................................................................................1

III.  Relevant facts ...........................................................................................................3

    A.  Temu's deceptive marketing and invasive data practices .......................................3

    B.  The arbitration agreement .....................................................................................3

    C.  Temu refused to engage in good faith dispute resolution conferences ...............................4

    D.  The AAA proceedings ...........................................................................................5

IV.   Legal standards ........................................................................................................5

    A.  Public policy favoring arbitration ...........................................................................5

    B.  Any ambiguities should be resolved in Petitioners' favor ......................................6

    C.  The summary judgment standard applies ...............................................................6

V.    Argument .................................................................................................................6

    A.  The Process Arbitrator's order does not preclude this Court from ruling on any issue .......7

        1.  Issue preclusion does not bar any of Petitioners' arguments ...........................................7

        2.  The Process Arbitrator did not—and could not—make any merits determinations ........9

    B.  This Court should compel arbitration on all threshold arbitrability questions .................11

        1.  This Court should compel arbitration on whether the carve-out itself is enforceable ...11

        2.  The question of the enforceability of the conference pre-condition is for the arbitrator13

        3.  The question of waiver is also for the arbitrator ............................................................13

    C.  In the alternative, this Court should find the carve-out unenforceable ............................14

        1.  The carve-out is unconscionable .................................................................................14

        2.  The carve-out violates public policy ...........................................................................16

        3.  The carve-out leads to absurd results .........................................................................16

        4.  The carve-out should be severed .................................................................................17

    D.  Should this Court reach the merits, it should find that conferences are not required ......17

        1.  The conference pre-condition is unconscionable ........................................................18

        2.  Temu waived any right to additional conferences through its bad faith conduct ..........22

        3.  Given Temu's bad faith, any future conferences would be futile ................................22

        4.  Petitioners satisfied the conference condition precedent ............................................24

VI.   Conclusion .............................................................................................................26

# Table of authorities

<u>Cases</u>

*18th Mgmt. Corp. v. CSC Serviceworks, Inc.*, No. 18-CV-4068 (NGG) (RML), 2019 U.S. Dist. LEXIS 113672 (E.D.N.Y. July 8, 2019) .................................................. 28

*Am. Chung Nam, LLC v. Mitsui O.S.K. Lines, Ltd.*, No. 2:23-cv-07676-SB-JPR, 2023 U.S. Dist. LEXIS 227709 (C.D. Cal. Dec. 19, 2023) ................................................. 25

*Am. Trading & Prod. Corp. v. Shell Int'l Marine, Ltd.*, 453 F.2d 939 (2d Cir. 1972)29

*Bank of N.Y. Mellon Tr. Co. v. Morgan Stanley Mortg. Cap., Inc.*, 821 F.3d 297 (2d Cir. 2016) .................................................................................................................. 31

*Benjamin v. Traffic Exec. Asso. E. R.Rs.*, 869 F.2d 107 (2d Cir. 1989) ................. 9, 10

*Bensadoun v. Jobe-Riat*, 316 F.3d 171 (2d Cir. 2003) ................................................. 6

*Bielski v. Coinbase, Inc.*, 87 F.4th 1003 (9th Cir. 2023) ........................................... 25

*Brandifino v. Cryptometrics, Inc.*, 2010 NY Slip Op 20062, 896 N.Y.S.2d 623 (Sup. Ct.) ........................................................................................................................ 20

*Brown v. Union Pac. R.R. Co.*, 703 F. Supp. 3d 1256 (D. Or. 2023) ........................ 17

*Chorley Enters. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553 (4th Cir. 2015) ....... 15

*Cirilli v. Country Ins. & Fin. Servs.*, 776 N.W.2d 272 (Wis. Ct. App. Oct. 28, 2009) . 8

*Clifford v. Cty. of Rockland*, 2016 NY Slip Op 05112, 35 N.Y.S.3d 211 (App. Div. 2nd Dept. Jun. 29, 2016) ................................................................................................ 8

*Danco Elec. Contractors, Inc. v. Dormitory Auth. of the State of N.Y.*, 2018 NY Slip Op 03935, 75 N.Y.S.3d 28 (App. Div. 1st Dept.) .................................................... 28

*Davenport v. NVIDIA Corp.*, 719 F. Supp. 3d 1019 (N.D. Cal. 2024) ....................... 25

*Dundon v. Komansky*, 15 F. App'x 27 (2d Cir. 2001) .................................................. 9

*Dupont v. Tobin, Carberry, O'Malley, Riley, Selinger, PC*, 322 F. App'x 66 (2d Cir. 2009) ....................................................................................................................... 10

*Evangelical Lutheran Good Samaritan Soc'y v. Moreno*, 277 F. Supp. 3d 1191 (D.N.M. 2017)) ....................................................................................................... 18

*First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938 (1995) ................................... 10, 13

*Fox v. Vision Serv. Plan*, 2017 WL 735735 (E.D. Cal. Feb. 24) ................................ 22

*Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79 (2000) ................... 17

*Greenwich Capital Fin. Prods., Inc. v. Negrin*, 2010 NY Slip Op 4638, 903 N.Y.S.2d 346 (App. Div. 1st Dept.) ........................................................................................ 20

*Hoosier Energy Rural Elec. Coop. v. Amoco Tax Leasing IV Corp.*, 34 F.3d 1310 (7th Cir. 1994) ................................................................................................................ 30

*In re BAM Trading Servs. Sec. Litig.*, 733 F. Supp. 3d 854 (N.D. Cal. 2024) .......... 26

*Jones v. Star Credit Corp.*, 298 N.Y.S.2d 264 (Sup. Ct. 1969) ................................. 18

*Kai Peng v. Uber Techs., Inc.*, 237 F. Supp. 3d 36 (E.D.N.Y. 2017) .......................... 13

*Kattula v. Coinbase Glob., Inc.*, No. 1:22-CV-3250-TWT, 2023 U.S. Dist. LEXIS 119359 (N.D. Ga. July 6, 2023) ............................................................................. 13

*Kennedy v. Automotive Maintenance, Inc.*, 384 N.Y.S.2d 921 (1976) ....................... 30

*Knudsen v. Lax*, 2007 NY Slip Op 27333, 842 N.Y.S.2d 341 (Cnty. Ct.) .................. 18

*KPMG LLP v. Cocchi*, 132 S. Ct. 23 (2011) .............................................................. 14

*LaVoice v. UBS Fin. Servs.*, 2013 U.S. Dist. LEXIS 138607 (S.D.N.Y. Sep. 25, 2013) ................................................................................................................................... 7

*Love v. Overstock.com, Inc.*, No. 2:22-cv-00118-DBB-CMR, 2022 U.S. Dist. LEXIS 144978 (D. Utah Aug. 12, 2022) ............................................................. 17

*MacClelland v. Cellco P'ship*, 609 F. Supp. 3d 1024 (N.D. Cal. 2022) ......... 19, 23, 24

*Malick v. NCO Fin. Servs.*, No. H-14-1545, 2015 U.S. Dist. LEXIS 87071 (S.D. Tex. July 6, 2015) ...................................................................................... 2

*Matter of 33 Calvert Props. LLC v. AMEC LLC*, 2020 NY Slip Op 20280, 135 N.Y.S.3d 767 (Sup. Ct. Oct. 27, 2020) ....................................................... 15

*Matter of Brenda DeLuca Tr.*, 108 A.D.3d 902 (3d Dep't 2013) ................................ 14

*Matter of Isaiah D.*, 2021 NY Slip Op 21200, 152 N.Y.S.3d 252 (Fam. Ct. N.Y. Jul. 27, 2021) .............................................................................................. 10

*McKinney v. Bonilla*, 2010 WL 2817179 (S.D. Cal. July 16)...................................... 23

*Meadows v. Cebridge Acquisition, LLC*, 132 F.4th 716 (4th Cir. 2025) ................... 25

*Mercy Flight Cent., Inc. v. Kondolf*, 2013 NY Slip Op 23219, 973 N.Y.S.2d 521 (City Ct. N.Y. Jul. 2, 2013) ................................................................................... 8

*Nyulassy v. Lockheed Martin Corp.*, 120 Cal. App. 4th 1267 (2004) .................. 22, 23

*Oppenheimer & Co. v. Neidhardt*, 56 F.3d 352 (2d Cir. 1995) .................................... 6

*Oppenheimer & Co. v. Oppenheim*, 86 N.Y.2d 685 (1995).......................................... 31

*Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 613 N.Y.S.2d 622 (App. Div. 1st Dept. 1994) ............................................................................................ 30

*PaineWebber Inc. v. Bybyk*, 81 F.3d 1193 (2d Cir. 1996)........................................... 12

*Pandolfi v. Aviagames, Inc.*, 2024 U.S. Dist. Lexis 159007, (N.D. Cal., Sep. 4, 2024) ........................................................................................................ 5, 11, 19

*PDL Biopharma, Inc. v. Wohlstadter*, 2019 NY Slip Op 32693(U) (Sup. Ct. Sep. 11, 2019) ....................................................................................................... 31

*Pokorny v. Quixtar, Inc.*, 601 F.3d 987 (9th Cir. 2010) ............................................. 23

*Rockwell Int'l Corp. v. BTR Dunlop, Inc.*, 596 N.Y.S.2d 72 (App. Div. 1st Dept. 1993) ........................................................................................................... 19

*Royal Bank of Canada v. Beneficial Fin. Leasing Corp.*, 87 Civ. 1056 (JMC), 1992 U.S. Dist. LEXIS 9496 (S.D.N.Y. June 29, 1992)................................... 31

*Schnabel v. Trilegiant Corp.*, 697 F.3d 110 (2d Cir. 2012).......................................... 6

*Shelby v. Brookdale Senior Living Inc.*, No. CV-20-00804-PHX-MTL, 2021 U.S. Dist. LEXIS 34802 (D. Ariz. Feb. 24, 2021)............................................. 25

*Siemens Energy, Inc. v. De Venezuela*, 82 F.4th 144 (2d Cir. 2023) ......................... 29

*Smith Barney Shearson Inc. v. Sacharow*, 689 N.E.2d 884 (1997)........................... 15

*Standard Gen. L.P. v. Travelers Indem. Co. of Conn.*, 261 F. Supp. 3d 502 (S.D.N.Y. 2017) ....................................................................................................... 20

*SteppeChange LLC v. VEON Ltd.*, 354 F. Supp. 3d 1033 (N.D. Cal. 2018) ............. 13

*Stern v. Gepo Realty Corp.*, 289 N.Y.274 (1942) ...................................................... 27

*Sunshine Steak, Salad & Seafood, Inc. v. W. I. M. Realty, Inc.*, 522 N.Y.S.2d 292 (App. Div. 3rd Dept. 1987)............................................................................ 28

*Uber Techs., Inc. v. Am. Arbitration Ass'n, Inc.*, 2021 WL 4789153 (Sup. Ct. N.Y. Cnty. 2021) ................................................................................................. 2

*United States v. Hernandez*, 404 F. App'x 521 (2d Cir. 2010).................................... 31

*Utica Mut. Ins. Co. v. Clearwater Ins. Co.*, 906 F.3d 12 (2d Cir. 2018) ................... 26

*Valdez v. Genesis Healthcare LLC*, No. CV 19-976-DMG (JCx), 2019 U.S. Dist. LEXIS 211110 (C.D. Cal. July 15, 2019) ............................................................. 23

*Wender v. GA Glob. Mkts., LLC*, 2017 NY Slip Op 01474, 46 N.Y.S.3d 887 (App. Div. 1st Dept.) ....................................................................................................... 28

*Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200 (2d Cir. 2002) ..................... 27

*White v. Four Seasons Hotels & Resorts*, 999 F. Supp. 2d 250 (D.D.C. 2013) ........... 26

*Whittaker v. Meir Fund Mgmt. LLC*, 2021 U.S. Dist. LEXIS 185718 (S.D.N.Y. Sep. 28, 2021) ..................................................................................................................... 13

*Witherell v. Lasky*, 145 N.Y.S.2d 624 (App. Div. 4th Dept. 1955) ............................. 30

*Wu v. Uber Techs., Inc.*, 2024 N.Y. LEXIS 1896, 2024 N.Y. Slip Op. 05869 (N.Y. Nov. 25, 2024) ...................................................................................................................... 15

*Wyly v. CA, Inc.*, 2009 U.S. Dist. LEXIS 90037 (E.D.N.Y. Sep. 2, 2009) ................... 20

*Young v. Hunter*, 6 N.Y. 203 (1852) ............................................................................. 27

*Ziboukh et al v. Whaleco*, No. 1:24-cv-03733-MKB-RML, ECF No. 89 ....................... 3

## Statutes

9 U.S.C. § 4 ................................................................................................................. i, 6

UCC 2-302 ...................................................................................................................... 15

## Memorandum of Points and Authorities

### I.    Introduction

Petitioners are Temu customers who did exactly what Temu's Terms told them to do: they initiated individual arbitrations to resolve their consumer protection claims. Before doing so, they even appeared for Temu's so-called dispute resolution "conferences." There, they were met by a low-level customer service representative with no authority to make or accept offers. The representative refused to engage in discussion and read a script of boilerplate questions, followed by a threat against consumers who chose to proceed. Temu never intended to resolve anything—it used the conferences to delay, intimidate, and undermine the arbitration process.

Temu then claimed the conferences were insufficient, invoking a carve-out that sends such disputes to court. But whether that carve-out is enforceable is itself a merits question for the arbitrator under the parties' delegation clause. This Court should send the case back to arbitration for all merits determinations.

If this Court reaches any merits, it should simply sever the carve-out and compel arbitration on all remaining issues. The carve-out is unconscionable and violates public policy—bouncing consumers between court and arbitration in a process that defeats the very efficiencies arbitration is supposed to offer.

And if this Court reaches the full merits, the result is the same. The conference pre-condition is unconscionable by design, intended to stall claims and exhaust consumers. Temu waived any right to enforce it by acting in bad faith, refusing to mediate despite an agreement with prior counsel, and making clear that further conferences would be futile. Petitioners, meanwhile, fulfilled their end of the bargain in good faith. This Court should deny Temu's motion and compel arbitration.

### II.    Temu's scheme to evade consumer protection laws by dodging both class actions and arbitration

For years, companies have used arbitration clauses to avoid class actions. *The*

*Use of Arbitration Agreements in Consumer Contracts*, Consumer Financial Protection Bureau (CFPB) (March 2015) ("These clauses allow companies to avoid accountability by . . . forcing people to go it alone or give up."). One consumer's loss is often insufficient incentive to arbitrate. *See, e.g.*, *Malick v. NCO Fin. Servs.*, No. H-14-1545, 2015 U.S. Dist. LEXIS 87071, at *16 (S.D. Tex. July 6, 2015) (consumer claims often involve small damages amounts). That means no victims are likely to step forward, immunizing companies from consumer protection laws.

In "mass arbitration," consumers bring similar individual claims through the same firms, enabling them to pursue their rights despite class waivers. JAMS, the AAA, and New York courts have recognized its legitimacy. *Uber Techs., Inc. v. Am. Arbitration Ass'n, Inc.*, 2021 WL 4789153, at *3 (Sup. Ct. N.Y. Cnty. 2021) (compelling about "31,000 nearly identical" arbitrations) *aff'd* 204 A.D.3d 506, 508–510, 167 N.Y.S.3d 66 (N.Y. 1st App. Div. 2022).

Companies use various strategies to frustrate arbitration. Some, like in *Uber*, refuse to pay fees, forcing delay. *See* Public Justice, *Bait And Switch: Many Corporations Promise to Pay Arbitration Fees, But Don't* (March 25, 2014). Others, like Temu, add onerous procedural hurdles.[1] These tactics reflect a broader effort to evade accountability in any forum.[2]

---

[1] Temu shamefully aligns itself with SCPS—an illegal online casino shut down by multiple states including New York and now facing anti-SLAPP and sanctions motions. Temu repeats SCPS's false claims, despite knowing they're baseless and irrelevant to the issues before this Court.

[2] Petitioners have previously demonstrated that Temu argued in arbitration that enforceability is for the court, while arguing in court that it is for the arbitrator. ECF No. 1-3, p. 17; *compare* ECF No. 1-5, pp. 210 (enforceability should be decided in court) *with* Ziboukh Pl.'s Amicus Br., *Hu v. Whaleco Inc.*, No. 1:23-cv-06962-MKB-RML, ECF No. 50, pp. 13-14 (enforceability should be decided in arbitration); *see also* Pl.'s Supp. Oppo., *Ziboukh et al v. Whaleco*, No. 1:24-cv-03733-MKB-RML, ECF No. 89,

Temu's refusal to arbitrate with five claimants who personally appeared—combined with its earlier decision to renege on mediation agreed to by prior counsel—shows its true aim is not to resolve disputes, but to block arbitration entirely. Its conduct confirms that no level of participation would satisfy Temu, which is using the process solely to obstruct.

## III.    Relevant facts

### A. Temu's deceptive marketing and invasive data practices

Temu, a Chinese-run online marketplace, is alleged to engage in false advertising and deceptive branding while selling low-cost goods shipped from China. It is also accused of invasive data collection through its app, which accesses sensitive user data without consent. These practices have triggered regulatory scrutiny, class actions, and the arbitrations brought by Petitioners.

### B. The arbitration agreement

The Agreement calls for arbitration of "any dispute" under New York law. Ex. 1, §§ 19.1, 18.3. It includes a pre-arbitration Notice of Dispute requirement and an informal dispute resolution conference, as a condition precedent to arbitration. Ex. 1, § 19.2. Section 19.7 delegates to the arbitrator all disputes "related to the interpretation, . . . enforceability, revocability, scope, or validity of the Arbitration Agreement." *Id.*

Four carve-outs to the delegation clause are relevant,[3] but only the third has been raised so far: "all Disputes about whether either party has satisfied any

---

pp. 9-10 (noting Temu's inconsistent positions in seeking to avoid both court and arbitration). Temu's shifts show its intent to avoid all forums.

[3] The three other carve-outs—on consolidation, fees, and governing terms—haven't been raised yet. As those issues arise in the AAA, Temu could use them to force three more trips to court, further delaying Petitioners' claims.

condition precedent to arbitration shall be decided only by a court." *Id.*

### C. Temu refused to engage in good faith dispute resolution conferences

In December 2023, counsel for the parties agreed to mediate the disputes before Robert A. Meyer. Ex. 16. However, after retaining new counsel, Temu later refused to honor the commitment to mediate, showing its disinterest in engaging in good-faith informal efforts to resolve the disputes.

After submitting their Notices of Dispute, Petitioners agreed to schedule pre-arbitration conferences, despite maintaining that the pre-condition was unenforceable. Exs. 2, 3, 4. On February 19, 2024, the parties conducted conferences by Zoom. Ex. 6; Kind Supp. Dec.

Despite insisting on the conferences, Temu had no good-faith interest in using them to discuss or resolve the disputes—even though its Terms stated the conferences were for informal dispute resolution. Exs. 1, 6. At each conference, a Temu customer service representative, Michael, followed the same script: four boilerplate questions and a threat of sanctions. Ex. 6. Regardless of how consumers responded, Michael moved on without discussion. *Id.* He repeatedly stated that his role was to "gather information," refused to answer questions, and admitted he had no authority to make or receive settlement offers. *Id.* At the end of each session, he read a scripted warning that Temu would seek sanctions if claims continued. *Id.*

Temu's counsel, Mr. Valenti, also attended. *Id.* He repeatedly encouraged the customer service representative's position that the purpose of the conferences was for Temu to gather information. *Id.* When Petitioners attempted discussion, or raised their own questions, Mr. Valenti instructed Michael not to engage and urged him to proceed through the script. *Id.*

At the end of five conferences, Michael confirmed that the same script and format would be used for the remaining claimants. Kind Supp. Dec., ¶¶ 4-13. He reiterated that no settlement discussions would occur and that his role was to "bring

— 4 —

all information back" to his team. *Id*. In light of this, and given that all claims arose from the same facts and legal theories detailed in the Notices of Dispute, Claimants' counsel addresssed Temu's boilerplate questions on behalf of the remaining claimants. *Id*.

### D. The AAA proceedings

On March 27, 2024, Petitioners began filing their claims in the AAA. Ex. 7. Respondent refused to participate, claiming that the parties had not satisfied the conference pre-condition. *See* Ex. 8. Petitioners responded that the conference requirement was unenforceable but, in any event, had been satisfied and requested that a Merits Arbitrator[4] decide the issue. Ex. 9.

The AAA appointed a Process Arbitrator, who directed the parties to brief which issue must be decided first: (1) whether the conference provision is *enforceable*—a question for the arbitrator—or (2) whether the conference requirement was *satisfied*—a question for the court. Exs. 10, 17. The parties fully briefed the issue. Exs. 11 to 14. On September 19, 2024, the Process Arbitrator ruled that a court must consider the issues before the claims can proceed. Ex. 15.

### IV.   Legal standards

### A. Public policy favoring arbitration

Petitioners have previously briefed the "liberal federal policy favoring arbitration" under the FAA and the rule that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," ECF No. 1-3, a position

---

[4] Under the AAA's mass arbitration protocols, a Process Arbitrator decides only limited procedural and administrative issues. *See generally Pandolfi v. Aviagames, Inc.*, No. 23-cv-05971-EMC, 2024 U.S. Dist. LEXIS 159007, at *26 (N.D. Cal. Sep. 4, 2024). A Merits Arbitrator, however, decides all substantive issues, including enforceability and arbitrability. *Id*. (noting that "arbitrability" is "substantive in nature" and reserved for the Merits Arbitrator).

Temu advocated when seeking to compel arbitration before this Court. ECF No. 1-3.

### B. Any ambiguities should be resolved in Petitioners' favor

Petitioners have also already briefed that any ambiguities in the Agreement must be construed against Temu, as the drafting party. ECF No. 1-3.

### C. The summary judgment standard applies

When deciding a petition to compel arbitration under the FAA, the court applies the summary judgment standard. *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003) (citing 9 U.S.C. § 4 (2000); *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 113 (2d Cir. 2012) (such issues "are evaluated to determine whether they raise a genuine issue of material fact"). As such, the party opposing "must submit evidentiary facts showing that there is a dispute." *Oppenheimer & Co. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995); *LaVoice v. UBS Fin. Servs.*, 2013 U.S. Dist. LEXIS 138607, at *8 (S.D.N.Y. Sep. 25, 2013) (under this standard, the court considers discovery materials and affidavits to determine whether any genuine issue exists).

### V.    Argument

As an initial matter, Temu's motion—styled as a "motion to dismiss"—fails to raise any genuine issue of material fact under the summary judgment standard. Petitioners submitted a declaration from counsel, who attended the conferences. ECF No. 1-4; Kind Supp. Dec.; Ex. 6, ECF No. 1-5, pp. 32–34. Petitioners also submitted declarations from the five claimants who appeared individually, confirming that Temu refused to engage, declined to consider settlement offers, and limited the conferences to scripted questions and threats. ECF Nos. 1-6 (Dwek), 1-7 (McMahan), 1-8 (Seagraves), 1-9 (Avrohom Shor), 1-10 (Ariella Shor). In response, Temu submitted no evidence or declarations—because it cannot credibly dispute Petitioners' accounts. No genuine issues of material fact exist.

Temu's motion should be denied because (1) the Process Arbitrator's Order does not preclude this Court from ruling on any issues and (2) the pending threshold

— 6 —

issues are for the arbitrator to determine. In the alternative, (3) this Court should sever the carve-out, leaving all remaining issues for the arbitrator, or (4) this Court should find, on the merits, that Petitioners are not required to participate in any further conferences.

## A. The Process Arbitrator's order does not preclude this Court from ruling on any issue

The Process Arbitrator's ruling does not preclude this Court from making any determinations *de novo* because (1) issue preclusion does not apply, and (2) the Process Arbitrator did not make any merits determinations.

### 1. Issue preclusion does not bar any of Petitioners' arguments

Under New York law, issue preclusion applies when: "(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and decided, (3) there was a full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits." *Clifford v. Cty. of Rockland*, 2016 NY Slip Op 05112, ¶ 1, 140 A.D.3d 1108, 1109, 35 N.Y.S.3d 211, 212 (App. Div. 2nd Dept. Jun. 29, 2016). Other than the third element (which is not at issue), the burden of establishing issue preclusion rests with its proponent. *E.g.*, *id.*; *Mercy Flight Cent., Inc. v. Kondolf*, 2013 NY Slip Op 23219, ¶ 6, 41 Misc. 3d 483, 491, 973 N.Y.S.2d 521, 528 (City Ct. N.Y. Jul. 2, 2013).

As an initial matter, Temu fails to show that issue preclusion applies to the administrative decision by a AAA Process Arbitrator. It is well established that under New York law, "issue preclusion only applies to factual determinations by administrative bodies, not to legal conclusions or mixed questions of law and fact." *Mercy Flight Cent., Inc. v. Kondolf*, 2013 NY Slip Op 23219, ¶ 6, 41 Misc. 3d 483, 491, 973 N.Y.S.2d 521, 528 (City Ct. N.Y. Jul. 2, 2013) (citing supporting cases); *see also Cirilli v. Country Ins. & Fin. Servs.*, 2009 WI App 167, ¶10, 322 Wis. 2d 238, 247, 776

N.W.2d 272, 276 (Wis. Ct. App. Oct. 28, 2009) (under Wisconsin law, an arbitrator's legal determinations, including contract interpretation, are reviewed by the court *de novo*). Here, there have been no factual determinations that deserve preclusive effect. Instead, the Process Arbitrator—akin to an administrative body—made a purely legal determination regarding the interpretation of the Agreement and directed the parties to have the court "consider" the issues before the case could proceed to a Merits Arbitrator.[5]

Even assuming issue preclusion applies generally, Temu cannot satisfy the required elements. First, the issues are not identical. The only decision made by the Process Arbitrator was that a court should consider the issues surrounding the conference pre-condition before the claims could proceed to Merits Arbitrators. She did not rule on whether the carve-out is enforceable, whether the conference pre-condition is valid, or on any issues of waiver, unconscionability, or other matters raised in this case.

Second, the Process Arbitrator has not "decided" any issue that Petitioners now seek to relitigate. To the contrary, she expressly declined to rule and directed the parties to submit the issues to the court. Petitioners are not relitigating—they are simply bringing these unresolved issues to this Court.

Third, the Process Arbitrator's decision was not "a valid and final judgment on the merits." A decision that merely directs a case to another venue is not a "final judgment on the merits." *See Matter of Isaiah D.*, 2021 NY Slip Op 21200, ¶ 7, 72

---

[5] The cases Temu relies on applied issue preclusion only to the arbitrator's factual findings—not to legal determinations. *Dundon v. Komansky*, 15 F. App'x 27, 29 (2d Cir. 2001) (applying estoppel to the arbitrator's factual determinations); *Benjamin v. Traffic Exec. Asso. E. R.Rs.*, 869 F.2d 107, 114 (2d Cir. 1989) (granting "collateral estoppel effect to the arbitrators' factual finding"). The Process Arbitrator here made no factual findings, so issue preclusion does not apply.

Misc. 3d 1120, 1131, 152 N.Y.S.3d 252, 262 (Fam. Ct. N.Y. Jul. 27, 2021) ("[T]here was not a final and valid prior judgment. . . . The matter concluded . . . not with a dismissal, but rather with an order removing the case to Family Court.").

Moreover, the Process Arbitrator's decision was not "valid" to the extent that she exceeded her power. "The question whether an arbitrator has exceeded his power is subject to *de novo* review." *Dupont v. Tobin, Carberry, O'Malley, Riley, Selinger, PC*, 322 F. App'x 66, 68 (2d Cir. 2009); *see also Benjamin v. Traffic Exec. Asso. E. R.Rs.*, 869 F.2d 107, 114 (2d Cir. 1989) (the arbitrator's factual findings are given preclusive effect only if "the arbitrators' findings were within their authority and expertise"); *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 942, 115 S. Ct. 1920, 1923 (1995) (on any matter that the party did not agree to arbitrate, a party has the right to a court's decision on the merits). Petitioners have consistently maintained that these issues should be decided by the Merits Arbitrator, and they reaffirm that here.

In sum, Petitioners are not attempting to relitigate any issues. Petitioners are doing what the Process Arbitrator directed: asking this Court to consider these issues before returning to arbitration.

## 2. The Process Arbitrator did not—and could not—make any merits determinations

The Process Arbitrator's authority is limited to non-merits issues, so her rulings have no binding effect on this Court. In the AAA, merits issues are for a Merits Arbitrator; the Process Arbitrator's jurisdiction is limited to administrative or ministerial matters. "The issue of arbitrability is a core merits determination and is hardly a ministerial decision that one would expect the Process Arbitrator to decide." *See generally Pandolfi v. Aviagames, Inc.*, 2024 U.S. Dist. Lexis 159007, 2024 WL 4051754 (N.D. Cal., Sep. 4, 2024) (discussing the AAA's Mass Arbitration Rule MA-6

and discussed the scope of the process arbitrator's jurisdiction); MA-6(c).[6]

Moreover, many claimants' due process rights may be violated if the Process Arbitrator had the power to adjudicate gateway merits-based issues. *Pandolfi*, 2024 U.S. Dist. Lexis 159007 (allowing the Process Arbitrator to decide gateway issues raises due process concerns by binding later claimants without notice or opportunity to be heard).

Here, the Process Arbitrator did not, and could not, decide any issues presented in this case: arbitrability (who decides the issues), enforceability, satisfaction, waiver and unconscionability, each require core merits determinations. *See* Process Arbitrator's Order, Exhibit 16, p. 1 (acknowledging that "a merits arbitrator must decide the issue of enforceability"). The Process Arbitrator's order merely deferred the issues until the court "considers" them; it did not—and could not—prevent this Court from sending them to arbitration, where they would go to the Merits Arbitrator by default.

Furthermore, Petitioners did not consent to submit any issue to the Process Arbitrator. A Process Arbitrator may decide "[a]ny other issue(s) the parties agree in writing to submit." *See* Def.'s Mot., pp. 8, 13. Temu falsely claims Petitioners "agreed to send the dispute over . . . to Arbitrator Welch," despite knowing no such agreement was made. *Id.* In reality, on July 22, 2024, Temu circulated a draft Joint Statement suggesting a joint agreement. Exs. 18, 18.1. Petitioners immediately redlined that language and reaffirmed that all issues should go to a Merits Arbitrator. *Id.* Petitioners permitted the filing to proceed by the deadline only after Temu's counsel confirmed the revised language would not be misused to imply consent. *Id.* ("The language you are objecting to does not state that you 'requested a process arbitrator'

---

[6] Available at
https://www.adr.org/sites/default/files/Mass_Arbitration_Supplementary_Rules.pdf.

. . .”). Temu now does exactly what it assured it would not. Petitioners never requested or agreed to submit any issue to the Process Arbitrator, and Temu's contrary claim is false.

### B. This Court should compel arbitration on all threshold arbitrability questions

This Court should compel arbitration on the (1) enforceability of the carve-out, (2) enforceability of the conference pre-condition, and (3) waiver issue.

#### 1. This Court should compel arbitration on whether the carve-out itself is enforceable

The Agreement delegates questions of arbitrability to the arbitrator, including the enforceability of the carve-out itself. Arbitrability is a question for the arbitrator when the agreement “clearly and unmistakably” delegates the issue. *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1198-99 (2d Cir. 1996) (concluding that “all disputes” necessarily includes disputes as to arbitrability) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 941, 115 S. Ct. 1920, 1923 (1995) (“‘[W]ho has the primary power to decide arbitrability’ turns upon what the parties agreed.”)); *Whittaker v. Meir Fund Mgmt. LLC*, 2021 U.S. Dist. LEXIS 185718, at *23 (S.D.N.Y. Sep. 28, 2021) (deferring to the arbitrator's findings on the application of the carve-out); *Kai Peng v. Uber Techs., Inc.*, 237 F. Supp. 3d 36, 53 (E.D.N.Y. 2017) (holding that a carve-out of a specific issue did “not negate a finding of clear and unmistakable delegation to the arbitrator to decide” issues not expressly carved out); *Pearl v. Coinbase Glob., Inc.*, No. 22-cv-03561-MMC, 2023 U.S. Dist. LEXIS 18587, at *20 (N.D. Cal. Feb. 3, 2023) (where the delegation clause was “clear and unmistakable” that the “scope” of the agreement was an issue for the arbitrator, the question of whether an issue was carved out was for the arbitrator to decide); *Kattula v. Coinbase Glob., Inc.*, No. 1:22-CV-3250-TWT, 2023 U.S. Dist. LEXIS 119359, at *13 (N.D. Ga. July 6, 2023) (same); *SteppeChange LLC v. VEON Ltd.*, 354 F. Supp. 3d 1033, 1044 (N.D. Cal. 2018)

(same).[7]

Indeed, this Court has previously determined that Temu's Agreement is "clear and unmistakable" that "arbitrability must be decided by an arbitrator." *Hu v. Whaleco, Inc.*, No. 23-CV-6962 (MKB), 2024 U.S. Dist. LEXIS 186759, at *57 (E.D.N.Y. Oct. 1, 2024). Section 19.7 clearly and unmistakably delegates "any dispute" about the "interpretation," "enforceability," and "scope," of "any portion" of the Agreement. Agr., § 19.7, ECF No. 1-5, p. 16. Thus, the arbitrator—the Merits Arbitrator—has "exclusive authority" to resolve arbitrability. While the carve-out is limited to disputes about whether a party "has satisfied any condition precedent," it does not remove questions about the carve-out's own interpretation or enforceability from the arbitrator's authority. *Id.* Those questions remain squarely delegated. Accordingly, the carve-out's enforceability is for the arbitrator to decide.

Temu wrongly contends that Petitioners' challenge to enforceability is an "affirmative defense" to satisfaction and therefore must be decided by the court. But as discussed, the Agreement clearly delegates enforceability to the arbitrator, and that delegation must be enforced under the FAA. Indeed, Temu itself concedes elsewhere in its brief (Def.'s Mot. at 18 n.17) that arbitration agreements may validly assign certain issues to an arbitrator and others to a court—even if it results in piecemeal litigation. *KPMG LLP v. Cocchi*, 132 S. Ct. 23, 26, 181 L. Ed. 2d 323 (2011). That rule applies equally to claims and affirmative defenses. *Chorley Enters. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 566 (4th Cir. 2015). Thus, even if enforceability were a defense, it remains delegated to the arbitrator.

Defendant is also wrong to suggest—based on outdated authority—that

---

[7] Defendant's reliance on *Matter of Brenda DeLuca Tr.*, 108 A.D.3d 902, 903–04 (3d Dep't 2013), is misplaced, as that case did not involve a clear and unmistakable delegation of arbitrability issues to the arbitrator.

conditions precedent are always for the court. Def.'s Mot., p. 15, n. 15. Since *First Options* (1995), New York courts assess whether the parties "clearly and unmistakably" delegated such issues, including arbitrability and conditions precedent, to the arbitrator under the FAA. *E.g.*, *Smith Barney Shearson Inc. v. Sacharow*, 91 N.Y.2d 39, 46, 666 N.Y.S.2d 990, 993, 689 N.E.2d 884, 887 (1997) (recognizing that the law has "evolved" to allow parties to contractually agree to arbitrate any issue); *Matter of 33 Calvert Props. LLC v. AMEC LLC*, 2020 NY Slip Op 20280, ¶ 8, 70 Misc. 3d 295, 308, 135 N.Y.S.3d 767, 778 (Sup. Ct. Oct. 27, 2020) (the "resolution over whether a given presumption applies is irrelevant" where the parties clearly delegated the issue); *Wu v. Uber Techs., Inc.*, 2024 N.Y. LEXIS 1896, 2024 N.Y. Slip Op. 05869, at *5 (N.Y. Nov. 25, 2024) (applying the "clear and unmistakable" test).

Therefore, because the Agreement clearly and unmistakably delegates issues of arbitrability, enforceability, and interpretation to the arbitrator, the arbitrator must decide whether the carve-out is enforceable.

## 2. The question of the enforceability of the conference pre-condition is for the arbitrator

Petitioners previously demonstrated that the arbitrator—not the court—must decide the enforceability of the conference pre-condition, under the plain language of the Terms and incorporated AAA rules. Pet.'s Memo., ECF No. 1-3, pp. 16-18. The carve-out only assigns issues of satisfaction—not enforceability—to the court.

Temu does not dispute that delegation and argues instead that enforceability is an affirmative defense to satisfaction. As above, that argument fails. The issue was plainly delegated to the arbitrator and calling it a defense does not change that. This Court should compel arbitration on the issue of enforceability.

## 3. The question of waiver is also for the arbitrator

Similarly, Petitioners previously showed that waiver is a matter of procedural

arbitrability for the arbitrator to decide. *Id.*, ECF No. 1-3, pp. 18–19. Temu again responds by framing waiver as an affirmative defense to satisfaction, but that argument fails for the same reason: the issue of waiver was clearly delegated and recasting it as a defense does not alter that result. Therefore, the issue of waiver should be resolved by the arbitrator—not this Court.

**C. In the alternative, this Court should find the carve-out unenforceable**

In the alternative, this Court should compel arbitration on all issues because the carve-out (1) is unconscionable, (2) violates public policy, (3) leads to absurd results, and (4) should be severed.

**1. The carve-out is unconscionable**

First, the carve-out is unconscionable because it imposes significant costs and delays on a consumer seeking to arbitrate against Temu. An arbitration provision that makes arbitration "prohibitively expensive" for a consumer is unconscionable. *See Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 92, 148 L. Ed. 2d 373, 121 S. Ct. 513 (2000) (discussing the burden required to prove that the arbitration provision would make bringing the claim "prohibitively expensive" for a consumer). Here, Petitioners should not be forced to file in both arbitration and court—only to be sent back again. This duplicative process is costly, wasteful, and unconscionable.

Temu claims that Petitioners "simply need to participate in the IDR process— which requires nothing more than participating in a phone call." Def.'s Mot., p. 18. But as demonstrated by McMahan, Dwek, Seagraves, and the Shors—who did exactly that—Temu still fought their efforts at every stage in arbitration and now seeks to dismiss their petition without justification. Their experience shows that participating in the phone call is not enough—Temu's resistance would be no different for the others.

Second, the carve-out is unconscionable because it is one-sided, applying only

— 14 —

to disputes Temu would bring. A "carve-out" to arbitration "is unconscionable if it exempts from arbitration 'those judicial remedies that the drafting party with superior bargaining power is likely to need.'" *Brown v. Union Pac. R.R. Co.*, 703 F. Supp. 3d 1256, 1265 (D. Or. 2023) (citing *Love v. Overstock.com, Inc.*, No. 2:22-cv-00118-DBB-CMR, 2022 U.S. Dist. LEXIS 144978 (D. Utah Aug. 12, 2022) (compelling arbitration despite a litigation carve-out)); *Evangelical Lutheran Good Samaritan Soc'y v. Moreno*, 277 F. Supp. 3d 1191 (D.N.M. 2017) (carve-out unconscionable where only the lender would likely benefit); *Jones v. Star Credit Corp.*, 59 Misc. 2d 189, 191, 298 N.Y.S.2d 264, 266 (Sup. Ct. 1969) (citing UCC 2-302 and noting "the concern for the uneducated and often illiterate individual who is the victim of gross inequality of bargaining power, usually the poorest members of the community"); *Knudsen v. Lax*, 2007 NY Slip Op 27333, ¶ 6, 17 Misc. 3d 350, 358, 842 N.Y.S.2d 341, 347 (Cnty. Ct. N.Y. Aug. 16, 2007) (The "inequality of bargaining power" rendered the agreement, drafted by the landlord, unconscionable). Here, the carve-out is one-sided and designed to benefit only Temu. It was drafted to block arbitration and let Temu bounce cases between forums to evade liability. This imbalance renders the carve-out unconscionable.[8]

Third, the carve-out is unconscionable because it has no purpose other than to delay consumers' ability to seek relief. *E.g.*, *Pandolfi v. Aviagames, Inc.*, No. 23-cv-05971-EMC, 2024 U.S. Dist. LEXIS 159007, at *10 (N.D. Cal. Sep. 4, 2024) (arbitration provision that would result in unfair delays for consumers to bring their claims was unconscionable); *MacClelland v. Cellco P'ship*, 609 F. Supp. 3d 1024, 1041

---

[8] *Pearl v. Coinbase Glob., Inc.*, No. 22-cv-03561-MMC, 2023 U.S. Dist. LEXIS 18587, at *19 (N.D. Cal. Feb. 3, 2023) is therefore distinguishable because the consumers there sought to litigate all arbitrability issues in court, so the carve-out actually benefitted them. *Id.* at n. 5. In any event, *Pearl* supports Petitioners, holding that challenges to a carve-out are for the arbitrator.

(N.D. Cal. 2022) (arbitration provision was substantively unconscionable because it effectively delayed adjudication of claims brought by consumers). Here, Petitioners' unrebutted evidence shows that Temu's pre-arbitration provisions—including the carve-out—were designed to delay proceedings, give Temu an unfair advantage, and chill consumers from asserting their claims. Ex. 6; Petitioners' Decs., ECF Nos. 1-6 to 1-10. Because the conference pre-condition is part of this unfair scheme, it is unconscionable.

In sum, this Court should find the carve-out unconscionable and compel all remaining claims, defenses, and issues to arbitration.

### 2. The carve-out violates public policy

The carve-out is unenforceable because it violates core public policies favoring single-forum resolution and efficient, cost-effective arbitration. *E.g.*, *Rockwell Int'l Corp. v. BTR Dunlop, Inc.*, 192 A.D.2d 454, 457, 596 N.Y.S.2d 72, 74 (App. Div. 1st Dept. 1993) ("public policy considerations . . . include[e] the bar against simultaneous pursuit of claims before the courts and in arbitration and the minimal role assigned to the courts . . . to conserve judicial resources.") (citations omitted). In parallel, federal and state law recognize that arbitration is intended to provide a faster, cheaper alternative to litigation. *E.g.*, *Brandifino v. Cryptometrics, Inc.*, 2010 NY Slip Op 20062, ¶ 10, 27 Misc. 3d 513, 524, 896 N.Y.S.2d 623, 630 (Sup. Ct.) ("[T]he purpose of arbitration [is] to provide a cost-effective and efficient means of resolving a claim.").

Here, the carve-out undermines core public policy by letting Temu force consumers into court despite good-faith arbitration efforts, defeating the FAA's goal of efficient, low-cost dispute resolution. Temu uses the carve-out in bad faith to frustrate consumer cases and burden the courts—without justification. It should be deemed unenforceable.

### 3. The carve-out leads to absurd results

"[I]n interpreting contracts, . . . absurd results should be avoided." *E.g.*,

— 16 —

*Standard Gen. L.P. v. Travelers Indem. Co. of Conn.*, 261 F. Supp. 3d 502, 511 (S.D.N.Y. 2017); *Greenwich Capital Fin. Prods., Inc. v. Negrin*, 2010 NY Slip Op 4638, ¶ 2, 74 A.D.3d 413, 415, 903 N.Y.S.2d 346, 348 (App. Div. 1st Dept.) ("[A] contract should not be interpreted to produce a result that is absurd, commercially unreasonable or contrary to the reasonable expectations of the parties.").

Temu's reading leads to absurd results by requiring the court to decide whether a condition was satisfied before the arbitrator rules on its enforceability. That sequencing forces an advisory opinion, which courts may not issue. *See Wyly v. CA, Inc.*, 2009 U.S. Dist. LEXIS 90037, at *45 (E.D.N.Y. Sep. 2, 2009). Because the carve-out imposes a backwards order, it should not be enforced.

The carve-out also leads to absurd results by forcing consumers to bounce between arbitration and court—first to file their claims, then to litigate a pre-condition, and then back to arbitration. Such procedural whiplash undermines the FAA and the parties' expectations.

Defendant argues that Petitioners can raise enforceability here in court but misses the point: Petitioners should not have had to file this petition at all. The arbitration agreement was meant to streamline resolution, not trigger endless detours. Section 19.7 also contains other carve-outs Temu may invoke next. Unless this gamesmanship ends, the case will keep ping-ponging between forums. Therefore, because the carve-out leads to illogical results, it is unenforceable.

### 4. The carve-out should be severed

Petitioners previously argued that if the carve-out is unenforceable, it should be severed. ECF No. 1-3, pp. 24–25. Temu does not oppose severance. Thus, because the carve-out is unenforceable for the reasons discussed, this Court should sever it.

## D. Should this Court reach the merits, it should find that further conferences are not required

Alternatively, this Court should find that (1) the conference pre-condition is

— 17 —

unconscionable, (2) Temu waived its right to enforce the pre-arbitration conference condition, (3) any future conferences would be futile, and (4) Petitioners have satisfied the conference pre-condition.

### 1. The conference pre-condition is unconscionable

The conference pre-condition, combined with the carve-out, is unconscionable and unenforceable for the same reasons discussed above: it (1) imposes prohibitive costs, (2) is one-sided in Temu's favor, and (3) serves only to delay consumers from seeking relief.

In addition, the conference pre-condition process is unfairly one-sided because it imposes no analogous requirement on Temu to preview defenses it may assert in arbitration. *See Fox v. Vision Serv. Plan*, 2017 WL 735735, at *7 (E.D. Cal. Feb. 24) (Because "nothing in the [Informal Dispute Resolution Process] requires [Defendant] to provide any information to the [claimant]," the asymmetric disclosures required by the process are one-sided and unconscionable.). Under sections 19.2 and 19.5 of the Terms, a consumer who wishes to bring a claim against Temu must first submit a Notice of Dispute. Ex. 1, §§ 19.2–19.5. Temu also insists on a conference, which it uses to "gather information," asking questions to the consumer (and threatening them) while simultaneously refusing to answer any of the consumer's questions. *See generally* Ex. 6; Kind Supp. Dec. Thus, the conference pre-condition is unconscionable because while the consumer is required to provide a detailed Notice of Dispute and answer Temu's questions, Temu is not required to provide any information to the consumer.[9]

---

[9] Temu's claim that the condition is not one-sided because "a claimant may ask Temu questions relating to what they are concerned about" is disingenuous. The uncontested record shows otherwise. Petitioners submitted written Notices of Dispute and answered Temu's questions during the conferences, yet Temu provided no Notice of Defenses and refused to answer Petitioners' questions—including specific

Further, the process is one-sided because the conference does not involve any neutral mediator. *Nyulassy v. Lockheed Martin Corp*., 120 Cal. App. 4th 1267, 1282-83 (2004) (requiring a plaintiff to participate in a dispute resolution mechanism without a neutral gives the defendant a "free peek" at the case, unfairly advantaging them before arbitration). The conferences here do not involve any neutral. *See* Ex. 6. This further exacerbates the one-sidedness of the process.[10]

Moreover, the procedures are one-sided because they require Petitioners to personally participate in the conference—even if represented by counsel—while imposing no similar obligation on Temu. *See, e.g., Nyulassy*, 120 Cal. App. 4th at 1282-83 (procedures were unconscionable where they only applied to an employee's claims but not vice versa); *Pokorny v. Quixtar, Inc*., 601 F.3d 987, 999 (9th Cir. 2010) (procedures applied only to one side); *see also, e.g., McKinney v. Bonilla*, 2010 WL 2817179, at *7 (S.D. Cal. July 16) (pre-arbitration procedures unconscionable where "it is difficult to see how" they could apply to the company); *MacClelland*, 609 F. Supp. 3d at 1042 ("mutuality . . . is a 'paramount' consideration" in assessing unconscionability"). Here, each consumer must attend in person, while Temu has no such obligation—further amplifying the imbalance, especially given that it's unclear how this procedure would ever apply if Temu initiated the dispute.[11]

---

inquiries about its advertising practices and use of tracking pixels. *E.g.*, Kind Supp. Dec.

[10] Temu's reliance on *Valdez v. Genesis Healthcare LLC*, No. CV 19-976-DMG (JCx), 2019 U.S. Dist. LEXIS 211110, at *24 (C.D. Cal. July 15, 2019), is misplaced. There, both parties were required to attend mediation before a neutral third party, and the plaintiff had "an opportunity to secure a 'peek' at her employer's defenses." *Id*. In contrast, no neutral was involved here, and Petitioners had no reciprocal opportunity to learn Temu's defenses—while Temu gained full insight into Petitioners' claims.

[11] The provision is one-sided on its face—but also in its application. Temu appeared only through counsel and a low-level customer service representative who lacked any

This dispute resolution process is also unfair as it functions as a bottleneck to resolution of the claims. *MacClelland*, 609 F. Supp. 3d at 1046 (provisions that "can operate to effectively thwart arbitration and vindication of rights altogether" are unconscionable). Here, the clause provides that "a separate conference must be held each time . . . even if the same law firm . . . represents multiple users in similar cases." Ex. 1, § 19.2. The record is unrebutted: Temu demands thousands of individual conferences to delay and intimidate Petitioners.

To be clear, Petitioners do not object to conferences based on the number of claimants, as Temu suggests, nor do they oppose informal dispute resolution generally.[12] Rather, Petitioners object to a process designed to frustrate and delay arbitration. Temu's bad-faith conduct made the conferences a waste of time. Temu created these procedures to obstruct, not resolve, disputes.

Defendant's reliance on *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1014 (9th Cir. 2023), is misplaced. There, the pre-condition was merely a complaint form—similar to the Notices of Dispute here—and did not include a conference requirement. Even so, the Ninth Circuit acknowledged possible "low levels of procedural and substantive unconscionability."

Further, Defendant's claim that the conference procedures are "tried and true" is unavailing, as none of the cases it cites involved a conference requirement, and

---

authority. Ex. 6. Temu was not required to designate anyone with decision-making authority. Petitioners, by contrast, had to appear personally with full decision-making authority.

[12] Temu's inclusion of Petitioners' counsel's *confidential* representation agreement raises serious questions about how it was obtained, and, in any case, is irrelevant to this briefing. There is no comparison between a mutual, good-faith IDR clause designed to resolve disputes efficiently and Temu's one-sided, obstructionist provision designed to threaten consumers, delay proceedings, and evade accountability.

each is otherwise distinguishable. *Am. Chung Nam, LLC v. Mitsui O.S.K. Lines, Ltd.*, No. 2:23-cv-07676-SB-JPR, 2023 U.S. Dist. LEXIS 227709, at *12 (C.D. Cal. Dec. 19, 2023) (commercial dispute; did not contain a conference requirement); *Meadows v. Cebridge Acquisition, LLC*, 132 F.4th 716, 732 (4th Cir. 2025) (involving only a notice of dispute requirement; no conference pre-condition at issue); *Shelby v. Brookdale Senior Living Inc.*, No. CV-20-00804-PHX-MTL, 2021 U.S. Dist. LEXIS 34802, at *13 (D. Ariz. Feb. 24, 2021) (involving only a requirement for "an informal exchange of settlement terms" prior to initiating arbitration); *Davenport v. NVIDIA Corp.*, 719 F. Supp. 3d 1019, 1031 (N.D. Cal. 2024) (involving only "a single straightforward step before arbitration: Users must 'contact NVIDIA by U.S. Mail'"); *In re BAM Trading Servs. Sec. Litig.*, 733 F. Supp. 3d 854, 869 (N.D. Cal. 2024) (pre-arbitration requirements were "not mandatory").[13] To the extent these cases uphold a written notice pre-condition, they are irrelevant. Temu does not dispute that Petitioners complied with that step. Ex. 2. The dispute concerns Temu's added conference requirement.

Temu's procedures are so unfair and one-sided that Temu can block arbitration at will. Petitioners acted in good faith, but the first five conferences showed that Temu had no intention of trying to resolve anything—those claimants ultimately ended up in court anyway. This Court should find the conference pre-condition unconscionable and unenforceable.

---

[13] Defendant's reliance on *White v. Four Seasons Hotels & Resorts*, 999 F. Supp. 2d 250, 261 (D.D.C. 2013) is similarly misplaced. There, the plaintiff failed to prove the agreement was one-sided because she failed to "point to any type of claim that her employer could feasibly bring . . . that would not otherwise be arbitrable."

## 2. Temu waived any right to additional conferences through its bad faith conduct

Temu's failure to engage in the conferences and informal dispute resolution in good faith constitutes a waiver of the condition precedent to arbitration. *See*, *e.g.*, *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 83 (2002); *Utica Mut. Ins. Co. v. Clearwater Ins. Co.*, 906 F.3d 12, 23 (2d Cir. 2018) ("a party to a contract cannot rely on the failure of another to perform a condition precedent where he has frustrated or prevented the occurrence of the condition") (quoting Restatement Second of Contracts § 225 cmt. b ("[A condition] may be excused by prevention or hindrance of its occurrence through a breach of the duty of good faith and fair dealing.")); *Young v. Hunter*, 6 N.Y. 203, 207 (1852) (same); *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 212 (2d Cir. 2002) (A party may not take advantage of a condition precedent by rendering it impossible to perform.) (citing *Stern v. Gepo Realty Corp.*, 289 N.Y.274, 277 (1942)).

Temu waived its right to enforce the conference pre-condition by frustrating its purpose. The parties agreed to mediate, but Temu later refused to proceed. Ex. 16.[14] Petitioners participated in the process in good faith, but Temu used the conferences to gather more information and issue threats. Accordingly, Temu waived its right to enforce the conference pre-condition.

## 3. Given Temu's bad faith, any future conferences would be futile

This Court should hold that Petitioners are not required to attend any further conferences because further participation would be futile. In New York, a party is

---

[14] Temu misleadingly quotes the email to suggest that Petitioners' counsel merely expressed being "amenable" to mediation, without reaching an agreement. But Temu knows full well that there was an agreement with its prior counsel to mediate all of these cases. The email in Exhibit 16 reflects the then-ongoing conversation.

excused from performance of a condition precedent when such performance would be futile. *E.g.*, *Wender v. GA Glob. Mkts., LLC*, 2017 NY Slip Op 01474, ¶ 1, 147 A.D.3d 663, 663, 46 N.Y.S.3d 887, 888 (App. Div. 1st Dept.) (the required notice to cure would have been futile because the employee could not cure the issue); *Sunshine Steak, Salad & Seafood, Inc. v. W. I. M. Realty, Inc.*, 135 A.D.2d 891, 892, 522 N.Y.S.2d 292, 293 (App. Div. 3rd Dept. 1987) (when it becomes clear one party will not honor the contract, the other is excused from performing futile conditions precedent); *E.g.*, *18th Mgmt. Corp. v. CSC Serviceworks, Inc.*, No. 18-CV-4068 (NGG) (RML), 2019 U.S. Dist. LEXIS 113672, at *15-16 (E.D.N.Y. July 8, 2019) ("New York common law does not require strict compliance with a contractual notice-and-cure provision when providing an opportunity to cure would be useless, or when it is impossible to cure."); *Danco Elec. Contractors, Inc. v. Dormitory Auth. of the State of N.Y.*, 2018 NY Slip Op 03935, ¶ 1, 162 A.D.3d 412, 413, 75 N.Y.S.3d 28, 29 (App. Div. 1st Dept.) (noncompliance of the notice pre-condition was "de minimis and defendant has shown no prejudice whatsoever").

Temu's brief clings to the conference requirement as form over substance—insisting on a plainly futile process. It begs the question: why fight so hard for a call with a low-level representative to "discuss" complex legal claims? A glance at the docket shows that these are complicated matters. The answer is simple: Temu has no intention of using the conferences to advance or resolve claims. Instead, the process is designed to obstruct arbitrations. Petitioners should not be forced into an exercise that serves no legitimate purpose and exposes them to threats and intimidation.

Furthermore, Petitioners are not required to engage in the conferences under the doctrine of impossibility. *See generally Siemens Energy, Inc. v. De Venezuela*, 82 F.4th 144, 153 (2d Cir. 2023). Impossibility need not be literal. "[P]erformance is rendered impossible if it can only be accomplished with extreme and unreasonable difficulty." *Am. Trading & Prod. Corp. v. Shell Int'l Marine, Ltd.*, 453 F.2d 939, 942

(2d Cir. 1972). Here, meaningful conferences are now practically impossible. Temu has shown no intent to participate in good faith—the core purpose of the requirement. Indeed, after over a year of obstruction and a broken mediation agreement, no conference could realistically serve its intended function.[15]

### 4. Petitioners satisfied the conference condition precedent

Finally, even if required, Petitioners satisfied the conference pre-condition by participating in the conferences on February 19, 2024. Ex. 6. Five Petitioners attended personally, and the others attended through counsel. *Id.*

Personal attendance was not required because, as discussed above, the requirement is one-sided and unconscionable.

Moreover, Petitioners substantially complied by attending through counsel, under the "substantial performance doctrine." *Kennedy v. Automotive Maintenance, Inc.*, 87 Misc. 2d 190, 384 N.Y.S.2d 921, 922 (1976) ("failure to perform a condition may be excused where there has been substantial performance"); *Hoosier Energy Rural Elec. Coop. v. Amoco Tax Leasing IV Corp.*, 34 F.3d 1310, 1318 (7th Cir. 1994) (similar); *Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 205 A.D.2d 412, 414, 613 N.Y.S.2d 622, 624 (App. Div. 1st Dept. 1994) (There is no requirement for contractual ambiguity to justify the substantial performance doctrine); *Witherell v. Lasky*, 286 A.D. 533, 536, 145 N.Y.S.2d 624, 627 (App. Div. 4th Dept. 1955) ("Substantial performance might make compliance with an express condition unnecessary, but only when the departure from full performance is an inconsiderable trifle having no pecuniary importance."); *Royal Bank of Canada v. Beneficial Fin.*

---

[15] Temu is therefore wrong to argue that Petitioners could still participate, "even if [they] could demonstrate any bad faith." Def.'s Mot., p. 24. Temu offers no reason why further conferences would serve any legitimate purpose. Given its conduct, they would be entirely futile.

*Leasing Corp.*, 87 Civ. 1056 (JMC), 1992 U.S. Dist. LEXIS 9496, at \*25 (S.D.N.Y. June 29, 1992) (similar); *Bank of N.Y. Mellon Tr. Co. v. Morgan Stanley Mortg. Cap., Inc.*, 821 F.3d 297, 312 (2d Cir. 2016) (similar).[16]

Here, Petitioners substantially satisfied the conference requirement. Counsel appeared on their behalf and answered all of Temu's boilerplate questions. Ex. 6; Kind Supp. Dec. The five Petitioners who attended in person saw no difference— Temu refused to engage, instead using the sessions to gather information and issue threats. *Id*. Requiring each Petitioner to appear would only delay the case and expose them to a futile, one-sided process and threats.[17]

In sum, the purpose of a pre-arbitration conference is to facilitate resolution before arbitration. Temu refused to engage. It has long known about Petitioners' claims and has had months to try to resolve them if it wished. Given Temu's bad faith, further conferences would serve no purpose, prejudice Petitioners, and delay their right to pursue their claims. This Court should find that Petitioners complied—or substantially complied—and compel arbitration.

---

[16] Temu wrongly relies on cases requiring strict compliance for express conditions precedent. *United States v. Hernandez*, 404 F. App'x 521, 523 (2d Cir. 2010); *Oppenheimer & Co. v. Oppenheim*, 86 N.Y.2d 685, 694, 636 N.Y.S.2d 734, 739, 660 N.E.2d 415, 420 (1995). But those same cases recognize that substantial compliance is enough when the condition would cause inequity or disproportionate forfeiture. *See PDL Biopharma, Inc. v. Wohlstadter*, 2019 NY Slip Op 32693(U), ¶ 19 (Sup. Ct. Sep. 11, 2019) (distinguishing *Oppenheimer*; strict compliance was excused where it "would create a substantially inequitable result").

[17] The same applies to Temu's "individual" conference requirement. Petitioners' counsel answered Temu's boilerplate questions for all claimants, whose claims are substantially identical. Kind Supp. Dec. Individual conferences would serve no legitimate purpose, cause unnecessary delay, and unfairly burden Petitioners. Petitioners substantially complied.

## VI.    Conclusion

Respectfully, this Court should grant Petitioners' petition to compel arbitration.

Dated this 28th day of July 2025.

Respectfully submitted,

KIND LAW

*/s/ Michael Kind*
Michael Kind
5071 North Rainbow Boulevard, Suite 110
Las Vegas, NV 89130
(702) 337-2322
mk@kindlaw.com
*Counsel for Petitioners*

— 26 —

## <u>Local Civil Rule 7.1(c) Certificate</u>

I hereby certify that this brief was prepared by an attorney using a computer and that, from introduction to conclusion, it contains 8,720 words, excluding the caption, table of contents, table of authorities, signature blocks, and the required certificates.

**KIND LAW**

*/s/ Michael Kind*
Michael Kind
5071 North Rainbow Boulevard, Suite 110
Las Vegas, NV 89130
*Counsel for Petitioners*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 28, 2025, a true copy of the foregoing was served

by email to:

    Matthew P. Valenti
    LATHAM & WATKINS LLP
    1271 Avenue of the Americas
    New York, NY 10020
    matthew.valenti@lw.com
    (212) 906-4798
    *Counsel for Respondent*

                       */s/ Michael Kind*