# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| AALANY MCMAHAN, ISAAC DWEK, LUKE SEAGRAVES, AVROHOM SHOR, AND ARIELLA SHOR, AND THE OTHER CLAIMANTS LISTED IN APPENDIX A, | ) ) ) ) ) | Case No. 1:25-cv-01590-MKB-CHK |
| Petitioners, | ) ) ) | District Judge Margo K. Brodie |
| v. | ) ) | Magistrate Judge Clay H. Kaminsky |
| WHALECO INC. d/b/a TEMU | ) ) | |
| Respondent. | ) | |

## RESPONDENT'S REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE PETITION TO COMPEL ARBITRATION

Date:  August 18, 2025

Serrin Turner
Matthew Valenti
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 906-1200
Facsimile:  (212) 751-4864
Email: serrin.turner@lw.com
        matthew.valenti@lw.com

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

ARGUMENT ......................................................................................................................2

I.  Petitioners' Purported "Evidence" Is Unavailing ................................................2

II.  Petitioners Are Barred from Relitigating the AAA's Order .................................2

III.  As the AAA Already Held, This Dispute Belongs in Court .................................4

IV.  The IDR Requirement Is Enforceable ..................................................................5

  A.  The IDR Requirement Is Not Unconscionable .........................................5
  B.  Temu Did Not Waive Enforcement of the IDR Requirement ...................8
  C.  Complying with the IDR Requirement Is Neither Impossible Nor Futile ..............8

V.  The IDR Requirement Cannot Be Satisfied "Through Counsel" .......................10

CONCLUSION ................................................................................................................11

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Bausch & Lomb Inc. v. Bressler*,
977 F.2d 720 (2d Cir. 1992)....................................................................9

*Ben-Zvi v. Bo Hi Pak*,
2011 WL 7095422 (S.D.N.Y. Dec. 16, 2011), *aff'd,* 510 F. App'x 2 (2d Cir.
2013) .........................................................................................................2

*Boguslavsky v. Kaplan*,
159 F.3d 715 (2d Cir. 1998)....................................................................3

*ChemImage Corp. v. Johnson & Johnson*,
2025 WL 1883908 (S.D.N.Y. 2025)........................................................9

*Chen-Oster v. Goldman, Sachs & Co*.,
449 F. Supp. 3d 216 (S.D.N.Y. 2020).....................................................10

*Colonial Funding Network, Inc. for TVT Cap., LLC v. Epazz, Inc*.,
252 F. Supp. 3d 274 (S.D.N.Y. 2017)......................................................4

*Denson v. Keplr Vision, LLC*,
2021 WL 3419237 (S.D. Cal. 2021) ........................................................6

*Don King Prods., Inc. v. Douglas*,
742 F. Supp. 778 (S.D.N.Y. 1990) ..........................................................7

*Ebert v. Holiday Inn*,
2014 WL 349640 (S.D.N.Y. 2014)...........................................................9

*Flynn v. FCA US LLC*,
2016 WL 5341199 (S.D. Ill. 2016) ..........................................................6

*Hadden v. Consol. Edison Co.*,
45 N.Y.2d 466 (1978) ..............................................................................8

*Jine v. OTA Franchise Corp.*,
2020 WL 7129374 (C.D. Cal. 2020)........................................................6

*Lewis v. Eassit, Inc.*,
2023 WL 2522812 (D. Utah 2023) ..........................................................6

*Melendez v. Ethical Culture Fieldston Sch.*,
2025 WL 1777887 (S.D.N.Y. 2025)........................................................7

*Metric Sys. Corp. v. McDonnell Douglas Corp.*,
    850 F. Supp. 1568 (N.D. Fla. 1994)...................................................................9

*NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*,
    770 F.3d 1010 (2d Cir. 2014)...................................................................4, 5

*Offshore Sportswear v. Vuarnet Int'l, B.V.*,
    114 F.3d 848 (9th Cir. 1997) ...................................................................3

*Pac. Home Improvement, LLC v. Rodriguez*,
    2022 WL 13956160 (D. Md. 2022) ...................................................................6

*Pilon v. Discovery Commc'ns, LLC*,
    769 F. Supp. 3d 273 (S.D.N.Y. 2025)...................................................................5

*Schnabel v. Trilegiant Corp.*,
    697 F.3d 110 (2d Cir. 2012)...................................................................2

*Sekisui Ta Indus., LLC v. Quality Tape Supply, Inc.*,
    2009 WL 2170500 (D. Md. July 17, 2009)...................................................................10

*Siemens Energy, Inc. v. Petróleos de Venezuela, S.A.*,
    82 F.4th 144 (2d Cir. 2023) ...................................................................4

*Tattoo Art, Inc. v. Tat Int'l, LLC*,
    771 F. Supp. 2d 645 (E.D. Va. 2010) ...................................................................10

*Torain v. Clear Channel Broad., Inc.*,
    651 F. Supp. 2d 125 (S.D.N.Y. 2009)...................................................................4

*Trone Health Servs., Inc. v. Express Scripts Holding Co.*,
    2017 WL 3412158 (E.D. Mo. Aug. 8, 2017)...................................................................9

*Westerbeke Corp. v. Daihatsu Motor Co., Ltd.*,
    304 F.3d 200 (2d Cir. 2002)...................................................................3

## <u>INTRODUCTION</u>

The only question properly before this Court is whether the Petitioners' non-compliance with the IDR requirement is excused because the provision is unenforceable. The AAA (correctly) ruled that it does not have jurisdiction over that question—a ruling that is preclusive here. Petitioners' opposition offers no valid basis for the Court to ignore or overrule that ruling.

As for Petitioners' arguments that the IDR requirement is unenforceable, they are all misguided. Petitioners challenge the requirement as unconscionable based on complaints about how Temu conducted the mere five conferences attended by any Kind Law clients; but unconscionability turns on the language of the contract and the circumstances of formation—not any party's subsequent performance. Petitioners argue that Temu "waived" the requirement based on its conduct; but far from ever indicating any intention to abandon the requirement, Temu has consistently insisted that Petitioners comply with it. And Petitioners say that compliance is "impossible" or "futile"; but there is nothing impossible about having a phone call with a customer service representative, nor are Petitioners entitled to assume it would be futile. While Petitioners portray the IDR requirement as some kind of nefarious trap that Temu uses to block consumers from ever proceeding to arbitration, in fact scores of users have gone through the process and proceeded to file arbitration claims without any objection from Temu that they failed to participate in good faith. There is no reason Kind Law's clients cannot do the same.

Petitioners' final argument—that they should be deemed to have participated in IDR conferences "through counsel"—tells the real story here: Kind Law wishes to satisfy the IDR requirement in a class-wide fashion, without having to arrange individual conferences for all of its clients. But the class action waiver in the Terms prohibit claims from being pursued on a collective basis. That applies to IDR conferences as much as the rest of the arbitration process.

For all of these reasons, as detailed below, the Petition should be denied.

1

## ARGUMENT

### I.    PETITIONERS' PURPORTED "EVIDENCE" IS UNAVAILING

Petitioners argue that the summary judgment standard applies and that Temu "fails to raise any genuine issue of material fact." Opp. 6. Petitioners are wrong. The motion does not challenge "*whether an arbitration agreement was formed*," *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 113 (2d Cir. 2012), but instead raises a dispute in which Petitioners challenge the enforceability of a precondition to arbitration as a defense to their non-compliance with it. Petitioners' "evidence"— conclusory and argumentative affidavits alleging that Temu acted in bad faith during five IDR conferences, Opp. 6—is not probative of any defense they raise. *See infra* § IV. In particular, it is irrelevant to their unconscionability challenge, which requires looking at the parties' agreement at the time of formation rather than any extrinsic evidence about subsequent performance. *See infra* § IV.A. Nonetheless, to the extent the Court wishes to consider evidence about what transpired at those five conferences, the Petition already attaches correspondence from Temu's counsel summarizing what they observed, *see* Pet. Ex. 5. Undersigned counsel submits a declaration herewith attesting to the same. *See* Declaration of Matthew Valenti.

### II.    PETITIONERS ARE BARRED FROM RELITIGATING THE AAA'S ORDER

Petitioners ask the Court to send this dispute back to arbitration after the AAA already ruled it has no jurisdiction. Their efforts to evade the AAA's ruling are baseless.

*First*, Petitioners argue that collateral estoppel does not apply to arbitration orders, Opp. 7-9, ignoring case law cited by Temu plainly holding that it does. Mot. at 12-13. Grasping at straws, Petitioners argue that Arbitrator Welch is "akin to an administrative body" for which estoppel "only applies to factual determinations," Opp. 7-8, but the analogy is not remotely apt. Arbitrator Welch is an arbitrator, not an administrative agency, and "[i]t is well-settled that collateral estoppel applies to issues resolved in arbitration." *Ben-Zvi v. Bo Hi Pak*, 2011 WL 7095422, at *2 (S.D.N.Y.

Dec. 16, 2011), *aff'd,* 510 F. App'x 2 (2d Cir. 2013). Nor does it apply merely to an arbitrator's "factual determinations." Rather, "[t]he doctrine of collateral estoppel precludes a party from relitigating in a subsequent proceeding *an issue of law or fact* that has already been decided in a prior proceeding." *Boguslavsky v. Kaplan*, 159 F.3d 715, 719-720 (2d Cir. 1998).

*Second*, Petitioners claim that estoppel does not apply because "the Process Arbitrator has not 'decided' any issue." Opp. 8. Nonsense. In Petitioners' own words, Arbitrator Welch "*ruled* that a court must consider the issues before the claims can proceed." Opp. 5; Pet. 6. Along similar lines, Petitioners argue that Arbitrator Welch "merely direct[ed] a case to another venue," Opp. 8, but that is not what she did. She ruled that the AAA lacked jurisdiction, and the AAA's rules make clear the ruling is final. *See* Pet. Ex. 15 at 6; Pet. Ex. 9.3 at MA-6(j); *cf. Offshore Sportswear v. Vuarnet Int'l, B.V.*, 114 F.3d 848, 851 (9th Cir. 1997) (holding that while dismissal based on forum selection clause is "not a determination on the merits of any cause of action," it "is a determination on the merits of the [applicability of the] clause itself" and is thus preclusive).

*Third*, Petitioners assert that Arbitrator Welch's order is not "valid" because she "exceeded her power." Opp. 9. The assertion is meritless. Per the AAA's rules, which apply per the parties' arbitration agreement, Terms § 19.5, the AAA may, "in its sole discretion," appoint a process arbitrator to resolve "[d]isputes over any applicable conditions precedent." Mot. 13 (citing Rule MA-6). Moreover, Petitioners themselves consented to Arbitrator Welch deciding the issues she did, as they agreed to a joint submission defining the issues for her to decide. Mot. 8, 13-14; Turner Decl., Ex. C (Joint Statement).[1] The notion that Arbitrator Welch somehow exceeded her authority by actually deciding those issues is simply fanciful. *See Westerbeke Corp. v. Daihatsu Motor Co.,*

---

[1] Petitioners assert that they did "not request[] a process arbitrator," Opp. 10 (citing Pet. Ex. 18), but whether they *requested* a Process Arbitrator is irrelevant. The point is that, after the AAA appointed one, Petitioners indisputably *consented* to her deciding the very jurisdictional issues they seek to relitigate here.

3

*Ltd.*, 304 F.3d 200, 219-20 (2d Cir. 2002) ("The FAA permits vacatur of an arbitral [award] 'where the arbitrators exceeded their powers,'" but this Circuit "consistently accord[s] the narrowest of readings to [this provision]" and "focuses on whether the arbitrators had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue … .").

## III.    AS THE AAA ALREADY HELD, THIS DISPUTE BELONGS IN COURT

Not only is Arbitrator Welch's jurisdictional ruling preclusive, it is also correct. Contrary to Petitioners' contentions, Opp. 11-13, the arbitration agreement does not "clearly and unmistakably" delegate the disputes at issue here to an arbitrator. *See NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1031 (2d Cir. 2014) ("The law generally treats arbitrability as an issue for judicial determination unless the parties clearly and unmistakably provide otherwise."). While the Terms generally delegate disputes to the arbitrator, the delegation clause carves out "*all Disputes* about whether either party has satisfied any condition precedent to arbitration." Terms § 19.7. That means that any disputes about satisfaction of the IDR provision belong in court—*inclusive of any defenses* a claimant asserts for why they did not satisfy the provision.

Petitioners assert that "Temu wrongly contends that Petitioners' challenge to enforceability is an 'affirmative defense' to satisfaction [of the IDR provision]," Opp. 12, but of course it is: "Under New York law, unconscionability is an affirmative defense to the enforcement of a contract." *Colonial Funding Network, Inc. for TVT Cap., LLC v. Epazz, Inc*., 252 F. Supp. 3d 274, 285 (S.D.N.Y. 2017). There is no such thing as a "cause of action" for unconscionability. *Id.* The same goes for Petitioners' waiver and impossibility arguments: They are affirmative defenses raised in a dispute about whether Petitioners satisfied a condition precedent.[2] They are therefore

---

[2] *See, e.g.*, *Torain v. Clear Channel Broad., Inc*., 651 F. Supp. 2d 125, 145 (S.D.N.Y. 2009) (waiver); *Siemens Energy, Inc. v. Petróleos de Venezuela, S.A.*, 82 F.4th 144, 153 (2d Cir. 2023) (impossibility).

covered by the delegation clause carveout and are not subject to arbitration, let alone "clearly and unmistakably." *NASDAQ OMX Grp.*, 770 F.3d at 1031 (explaining that the "clear and unmistakable" threshold is not met "where a broad arbitration clause is subject to a qualifying provision that at least arguably covers the present dispute").

Petitioners' assertion that the carveout raises public policy concerns contradicts their own acknowledgment that "arbitration agreements may validly assign certain issues to an arbitrator and others to a court—even if it results in piecemeal litigation." Opp. 12 (citing cases). Besides, it is not true that the carveout requires consumers to "bounce between arbitration and court," Opp. 17. To the extent Petitioners have litigated in multiple forums, it is a problem of their own making because they made a strategic decision to file arbitration demands knowing they had not fulfilled a precondition to doing so. Mot. 18 n.17. Petitioners' complaint about having to "ping-pong[] between forums," Opp. 17, is hard to take seriously when Petitioners are the ones asking the Court to send them *back to arbitration* to litigate these issues a third time.

## IV.    THE IDR REQUIREMENT IS ENFORCEABLE

### A.    The IDR Requirement Is Not Unconscionable

Petitioners do not come close to showing that the IDR requirement "is 'so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms.'" *Pilon v. Discovery Commc'ns, LLC*, 769 F. Supp. 3d 273, 296 (S.D.N.Y. 2025). As Temu has shown, and as the Court has stated, such requirements are "tried and true" and "[not] problematic." *See* Mot. 20-21 (citing cases).

Petitioners purport to distinguish Temu's cited cases on the ground that "none [] involved a conference requirement," Opp. 20-21, but they do not explain why that makes any difference. If anything, a brief phone call requires less effort than preparing a "written notice," Opp. 21. Moreover, plenty of cases enforce "conference requirements"—including ones requiring *formal*

*mediation*, much less a mere phone call. *See, e.g., Lewis v. Eassit, Inc.*, 2023 WL 2522812, at *1 (D. Utah 2023) (rejecting unconscionability challenge to pre-suit mediation requirement); *Pac. Home Improvement, LLC v. Rodriguez*, 2022 WL 13956160, at *3 (D. Md. 2022) ("[A] contractual provision requiring mediation before the filing of litigation is enforceable[.]") (collecting cases); *Denson v. Keplr Vision, LLC*, 2021 WL 3419237, at *3 (S.D. Cal. 2021) (mediation provision "simply requir[ing] the parties to pursue an informal resolution prior to arbitration" is not unconscionable); *Flynn v. FCA US LLC*, 2016 WL 5341199, at *4 (S.D. Ill. 2016) (agreement not unconscionable merely because it required "two pre-arbitration phone calls").

Contrary to Petitioners' contentions, the IDR provision is not "one-sided," Opp. 18-19. It applies equally if Temu were to bring an arbitration demand. Mot. 21-22. Nor does the provision allow Temu to "gather information" from claimants without an "analogous requirement on Temu," Opp. 18. Petitioners are reading requirements into the provision that do not exist: All it requires is an informal discussion where both sides participate. Mot. 22; Terms § 19.2. Both parties are equally free to ask the other questions—and both parties are free not to answer a question if they feel it intrudes into their litigation strategy. *See Jine v. OTA Franchise Corp.*, 2020 WL 7129374, at *12 (C.D. Cal. 2020) (rejecting argument that provision gave a "preview of plaintiff's case" when it "merely states that the parties will attempt to settle the disagreement by consulting and negotiating with each other" and may arbitrate "if within 60 days an agreement is not reached").

No doubt recognizing the IDR requirement is reasonable on its face, Petitioners try to base their unconscionability challenge on allegations that Temu acted in "bad faith" during the five IDR conferences that actually took place. Opp. 14, 21. Petitioners' characterization of those conferences is grossly distorted, *see* Valenti Decl. & Pet. Ex. 5, but more important, it is irrelevant to whether the IDR requirement is unconscionable. "The doctrine of unconscionability implicates

the circumstances and terms of a contract at the time of formation—not the parties' subsequent performance under it." *Don King Prods., Inc. v. Douglas*, 742 F. Supp. 778, 780 (S.D.N.Y. 1990); *see also, e.g.*, *Melendez v. Ethical Culture Fieldston Sch.*, 2025 WL 1777887, at *11 (S.D.N.Y. 2025) ("A determination of unconscionability generally requires a showing that the contract was both procedurally and substantively unconscionable *when made*.") (emphasis added). Petitioners' allegations of "bad faith" go not to whether the IDR requirement is unconscionable, but to whether Temu *complied* with it *in those five conferences*. The proper remedy for such non-compliance if it occurred (and it did not) would be specific performance—*e.g.*, requiring Temu to redo *those five* conferences or to arbitrate with *those five* Petitioners. It would not be to invalidate the requirement as a whole as unconscionable. *See Don King Prods.*, 742 F. Supp. at 780 ("The … performance by [a party] is, of course, relevant to whether [that party] breached his obligations of good faith and fair dealing under the contracts[.] … That conduct has, however, absolutely no bearing on the defense of unconscionability … .").

Finally, Kind Law has no coherent explanation—because there is none—as to how Temu's IDR requirement is unconscionable when Kind Law itself imposes *more* burdensome, multi-step pre-arbitration requirements *on its own clients*. Mot. 23; Opp. 20 n.12. Here, Kind Law complains a brief phone call is too "expensive," is "one-sided," "bottlenecks claims," and "does not involve any neutral mediator," yet their own engagement agreement with Petitioners requires them to "first try to settle [a dispute] through direct discussions," and if that fails, "try to settle the dispute [through] mediation," before the client may file an arbitration demand. Turner Decl., Ex. E. The hypocrisy is glaring.[3]

---

[3] Kind Law's only response is to accuse Temu of obtaining its engagement letter through nefarious means, *see* Opp. 20 n.12—which is absurd. As stated in the Turner Declaration, the agreement is posted on a

### B.    Temu Did Not Waive Enforcement of the IDR Requirement

Petitioners' argument that Temu "waived" the IDR requirement, Opp. 22, hardly merits a response. Waiver requires the "intentional relinquishment of a known right[.]" *Hadden v. Consol. Edison Co.*, 45 N.Y.2d 466, 469 (1978). Temu has consistently sought to *exercise* its right to meet individually with Petitioners by scheduling and attending IDR conferences. Its defense of this litigation only further demonstrates its intention to assert that right. Petitioners offer no coherent argument that Temu ever indicated an intention to relinquish the right.

### C.    Complying with the IDR Requirement Is Neither Impossible Nor Futile

Petitioners' arguments that complying with the IDR requirement is "impossible" or "futile," Opp. 22-24, are likewise baseless. Petitioners assert, based on the mere five IDR conferences that Kind Law clients attended, that "no level of participation [in IDR conferences] would satisfy Temu, which is using the process solely to obstruct." *Id*. at 3. As an initial matter, that is simply wrong. In fact, *scores* of consumers (represented by counsel other than Kind Law) have completed IDR conferences with Temu and gone on to file arbitration claims, without any objection from Temu that they failed to participate in the conferences in good faith. Valenti Decl. ¶ 6. Some of these conferences have even resulted in informal resolutions being reached. *Id*. ¶ 6. The only reason Temu has objected to the five IDR conferences arranged by Kind Law is that Kind Law constantly interjected during them, preventing any meaningful discussion. Pet. Ex. 5.

The Court need not resolve any factual issue about these five conferences, however, to resolve Petitioners' impossibility or futility defenses. Petitioners are not arguing simply that these five Petitioners complied in good faith and should be allowed to proceed to arbitration. They are

---

*publicly available website* (https://www.scribd.com/document/714663668/2-Temu-Retainer-Agreement), which anyone can find through a Google search for "Kind Law Sandra Lucas" (Ms. Lucas is one of the Petitioners). It is *still available there* today notwithstanding Kind Law's purported concerns.

arguing that, based on these conferences, it is "impossible" or "futile" for the *thousands of other Petitioners* at bar to comply with the IDR requirement. That logic does not compute.

The impossibility doctrine requires "far more than a belief, or even proof, that the other party is 'impossible' to work with." *Metric Sys. Corp. v. McDonnell Douglas Corp.*, 850 F. Supp. 1568, 1582 n.10 (N.D. Fla. 1994). "Case law is clear that impossibility excuses a party's performance under very limited and narrowly defined circumstances," where "the means of performance makes performance objectively impossible[.]" *Ebert v. Holiday Inn,* 2014 WL 349640, at *7 (S.D.N.Y. 2014). The "means of performance" here is straightforward. Indeed, Temu would welcome a ruling that, as long as a complainant personally appears at a conference and they (and their counsel) at least hear the Temu representative out—by allowing the representative to speak uninterrupted—that will satisfy the complainant's obligation to participate. Plainly, merely doing *that*—showing up and listening—is not "impossible." And the thousands of Petitioners who cancelled their conferences did not do it.

The same goes for futility. "[T]he Second Circuit has instructed that the futility exception to conditions precedent … generally comes into play only when 'the repudiating party expressly disavowed any further duties under the contract at issue[.]'" *ChemImage Corp. v. Johnson & Johnson*, 2025 WL 1883908, at *13–14 (S.D.N.Y. 2025) (quoting *Bausch & Lomb Inc. v. Bressler*, 977 F.2d 720, 727-28 (2d Cir. 1992)). Petitioners' counsel cannot unilaterally declare the IDR requirement "futile" based on the belief that none of its thousands of clients will be able to reach any informal resolution with Temu. The very point of the IDR requirement is to allow Temu to speak *individually and directly* to each claimant, in order to provide an *opportunity* for informal resolution. Petitioners' counsel is not entitled to presume the outcome of these conferences in order to deprive Temu of this contractual right. *See Trone Health Servs., Inc. v. Express Scripts Holding*

*Co*., 2017 WL 3412158, at *3 (E.D. Mo. Aug. 8, 2017) (rejecting futility argument against enforcing contractual pre-suit mediation requirement: "While [requiring mediation] may ultimately prove futile because the parties are not required to resolve the dispute through mediation, 'by failing to request mediation prior to filing this lawsuit, Plaintiff[s] denied Defendants the benefit of their bargain.'" (quoting *Tattoo Art, Inc. v. Tat Int'l, LLC*, 711 F. Supp. 2d 645, 652 (E.D. Va. 2010))); *Sekisui Ta Indus., LLC v. Quality Tape Supply, Inc*., 2009 WL 2170500, at *6 (D. Md. July 17, 2009) (rejecting similar futility argument because "it cannot be conclusively determined in advance" that mediation "would fail").

## V.    THE IDR REQUIREMENT CANNOT BE SATISFIED "THROUGH COUNSEL"

Finally, Petitioners argue that they "substantially performed" their obligation to attend IDR conferences by somehow "attending through counsel" at the five conferences that went forward. Opp. 24. The argument is not only meritless, Mot. 25, it is telling. At bottom, Petitioners (or really, their counsel) seek to rewrite the arbitration agreement to allow for satisfaction of the IDR requirement on a *class-wide* basis—with the five individuals who appeared at their IDR conferences acting as some sort of class representatives for Kind Law's other clients. In this way, Petitioners' true beef is not with the IDR conference requirement, but with the class litigation waiver contained in the Terms, which requires them to pursue their disputes "only on an individual basis and not on a class, representative, or collective basis." *See* Terms § 19.4.

Such waivers, however, are routinely upheld as enforceable. *See, e.g.*, *Chen-Oster v. Goldman, Sachs & Co*., 449 F. Supp. 3d 216, 251 & n.28 (S.D.N.Y. 2020) (discussing case law). Petitioners do not, and cannot, provide any reason why they should be able to ignore the waiver here—or its application to informal dispute resolution. *See* Terms § 19.4 (stating that the parties waive all rights to have their claims, *inter alia*, "resolved" on a "class" or "representative" basis).

## <u>CONCLUSION</u>

For the reasons above, the Petition to Compel Arbitration should be dismissed on the ground that Petitioners have failed to comply with an enforceable condition precedent.

Dated:  August 18, 2025

Respectfully submitted,

*/s/ Serrin Turner*
Serrin Turner
Matthew Valenti
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 906-1200
Facsimile:  (212) 751-4864
Email:  serrin.turner@lw.com
        matthew.valenti@lw.com

*Attorneys for Defendant Whaleco Inc. d/b/a Temu*