1271 Avenue of the Americas
New York, New York 10020-1401
Tel: +1.212.906.1200  Fax: +1.212.751.4864
www.lw.com

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Austin | Milan |
| Beijing | Munich |
| Boston | New York |
| Brussels | Orange County |
| Chicago | Paris |
| Dubai | Riyadh |
| Düsseldorf | San Diego |
| Frankfurt | San Francisco |
| Hamburg | Seoul |
| Hong Kong | Silicon Valley |
| Houston | Singapore |
| London | Tel Aviv |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |

**LATHAM & WATKINS LLP**

December 4, 2025

**VIA ECF**

Hon. Margo K. Brodie
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: Response to Petitioners' Notice of Supplemental Authority
*McMahan et al. v. Whaleco Inc. d/b/a Temu*, No. 25-cv-01590-MKB-RML (E.D.N.Y.)

Dear Chief Judge Brodie:

We write on behalf of Defendant Whaleco Inc. d/b/a Temu to respond to Petitioners' Notice of Supplemental Authority filed on November 18, 2025, *see* ECF No. 22, in which Petitioners cite *Rios v. HRB Digit. LLC*, No. 25-cv-03530-EMC, 2025 U.S. Dist. LEXIS 213961 (N.D. Cal. Oct. 27, 2025). Notwithstanding Petitioners' characterization of *Rios* as "directly relevant," ECF No. 22 at 1, and as involving an arbitration provision that "closely mirrors Temu's," *id.* at 2, the case in fact turned on contractual terms that are nowhere to be found in Temu's arbitration agreement, and thus its holding is not relevant here at all.

*Rios* dealt with a *bellwether* provision—not a mere *batching* provision—that applied where 25 or more arbitrations are filed raising similar claims. *See* Rios, 2025 U.S. Dist. Lexis 213961, at *6 (describing the provision as imposing a "bellwether protocol"). Specifically, the provision imposed a "staged bellwether process," where each side would select 10 "test cases" for resolution by individual arbitrators, which had to be resolved first before any other cases could go forward. *Id.* "Only after each of those arbitrations [were] resolved [could] the next set of 20 cases proceed." *Id.* at *6-*7. Likewise, after that, "each round (and all cases therein) [had to] be completed before proceeding to the next round." *Id.* at *7.

The court in *Rios* held this bellwether process to be unconscionable because of the lengthy delays it threatened to impose on claimants, who each would have to wait for prior rounds of bellwether cases to be resolved before their claims could move forward. *Id.* at *28-36. As the court put it: "Even assuming that most arbitrations proceed efficiently, a single outlier or protracted case can hold up hundreds of other claims indefinitely." *Id.* at *29. And even if *all* arbitrations proceed efficiently—with each bellwether round resolved within 120 days—the successive staging of each round would necessarily result in lengthy cumulative delays, such that it would take, for example, "a 13-year timeline to resolve a batch of 2,000 Notices." *Id.* The *Rios* court commented that "no consumer expects to wait a decade or longer to adjudicate low-dollar claims." *Id.* And while the

arbitration agreement contained a tolling provision that applied while the bellwether process was ongoing, the court found that the provision provided little comfort, as it only applied if a claimant had filed a "fully complete" notice—and it was unclear what was required for a notice to be "fully complete." As a result, claimants could lack certainty for years as to the timeliness of their claims while they waited for their arbitration to proceed. *Id.* at *37-38.

None of these concerns from *Rios* have any application here. Unlike the arbitration agreement there, Temu's Terms do not provide for "bellwether" or "staged" arbitration. They merely provide for the *batching* of related cases—while specifically providing that these batches are to be arbitrated *concurrently*, rather than sequentially. Terms § 19.9 (providing that related arbitration demands shall be batched in groups of 100, at which point the batches are to proceed to arbitration "concurrently"). There is no requirement that claimants must wait to arbitrate their demands until others' claims have been resolved, or any other provision that would cause demands to "languish for years." *See Rios*, U.S. Dist. LEXIS 213961, at *19. Petitioners also fail to identify any provision in the Terms that would cause uncertainty about the tolling of claims pending bellwether proceedings—because the agreement does not contemplate bellwether proceedings in the first place. Any tolling disputes can instead be raised in the ordinary course as arbitration demands are decided on a concurrent basis.

Thus, *Rios* is of no help to Petitioners, as they face no prospect of delay from bellwether adjudication of their claims. As Temu explained in its motion papers, the only delay in arbitrating Petitioners' claims here is of their own making, as they have chosen not to comply with Temu's IDR process. The assertion in Petitioners' letter that Temu has "no objective criteria" for claiming that they have failed to comply, *see* ECF No. 22 at 1, is nonsense. Petitioners failed to comply because all but a few *refused to attend* IDR conferences, as Petitioners themselves acknowledge. *See* ECF No. 15-1 at 5-7. It is hard to imagine more objective criteria for a lack of participation than a refusal to participate.

We thank the Court for its consideration of this response.

                                            Respectfully submitted,

                                            */s/ Serrin Turner*

                                            Serrin Turner
                                            of LATHAM & WATKINS LLP

cc: All Counsel of Record (via ECF)